EDDINS-WALCHER BUTANE COMPANY V. ROBERT S. CALVERT ET AL.

No. A-6028. Decided January 23, 1957.
Rehearing overruled February 27, 1957.
(298 S.W. 2d Series 93).

588

*Weatherred, Geary & Shelton, H. L. Morrison, Jr., W. S. Barron, Jr.,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the storage and distribution facilities of petitioner located in the City of Rankin, Texas, constitutes a "gas works" or "gas plant" within

the meaning of Article 7060, Revised Civil Statutes of Texas. Utilities Natural Gas Co. v. State, 133 Texas 313, 128 S.W. 2d 1153; Village of Walthill v. Iowa Electric Light & Power Co., 125 Fed. Supp., 859; A. B. Frank Co. v. Latham, 145 Texas 30, 193 S.W. 2d 671.

*John Ben Shepperd,* Attorney General, *W. V. Geppert* and *L. P. Lollar,* Assistants Attorney General, for respondents.

In reply to petitioner's contentions cited Dallas Gas Co. v. State, 261 S.W. 1063, error refused; Lane v. Ross, 151 Texas 268, 249 S.W. 2d 591; Stanford v. Butler, 142 Texas 692, 181 S.W. 2d 269.

MR. JUSTICE WALKER delivered the opinion of the Court.

Eddins-Walcher Butane Company, petitioner, brought this suit against respondents, the Comptroller of Public Accounts and other State officials named in Art. 7057b, Vernon's Texas Civil Statute, to recover occupation taxes paid under protest. The Court of Civil Appeals has affirmed the judgment of the trial court, rendered at the conclusion of a nonjury trial, denying petitioner any relief. 293 S.W. 2d 104. It is our opinion that petitioner is not subject to the tax.

Article 7060, Vernon's Texas Civil Statute, requires the payment of an occupation tax based on gross receipts from the operation of "any gas, electric light, electric power, or water works, or water and light plant, located within any incorporated town or city in this State, and used for local sale and distribution in said town or city." Petitioner is a corporation engaged in the business of buying and selling liquefied petroleum gas. The home office of the company is in Midland, but there are a number of branch offices, including one located within the city limits of Rankin, an incorporated town in the 1,000-2,500 population bracket according to the last Federal Census. The tax in question was exacted of petitioner under the provisions of the last mentioned statute and is based upon petitioner's gross receipts from business done in Rankin.

The products which petitioner distributes are originally captured from the earth in the form of a gas. For convenience in handling, however, the gas is liquefied under pressure at the refinery. The facilities maintained by petitioner in Rankin consist of two storage tanks, two tank trucks and an office. Petitioner purchases the gas in a liquid state from several refineries

in Texas and New Mexico, and transports the same by truck to and places the same in the storage tanks in Rankin. The liquefied gas is then transferred by truck from petitioner's storage facilities into the tanks of its customers in and around the town. The products are kept under pressure and remain in liquid form from the time they are purchased at the refinery until after delivery to petitioner's customers, and are not processed or changed by petitioner in any way. They are eventually consumed by the ultimate purchaser in the form of a gas.

Petitioner contends that liquefied petroleum gas is not a gas within the meaning of Art. 7060 in so far as petitioner's dealings and contacts with it are concerned. As we view the case it is not necessary for us to decide that question, and we shall assume for the purpose of this opinion that there is no merit in such contention.

The key words of the statute as applied to this case are "gas works," which the parties agree are synonymous with "gas plant." There is some basis for petitioner's argument that the term connotes an establishment in which gas is manufactured or processed as distinguished from merely being distributed. Webster defines "gas works" as "a manufactory of gas, esp. illuminating gas; a gas plant;—usually construed in the singular," and the term "gas plant" is defined as "a plant for manufacturing gas." And in Village of Walthill v. Iowa Electric Light and Power Company, D.C. 125 Fed. Supp. 859, (reversed on other grounds, 228 Fed. 2d 647) it was held that a gas distribution system could not be condemned under a statute authorizing the acquisition of a "gas plant" by eminent domain.

From a reading of the entire statute, however, we have concluded that the Legislature did not intend that the term should be given the limited meaning for which petitioner contends. It is expressly provided that the tax shall be levied only once on the same commodity, and that where the commodity is produced by one person and distributed by another, the tax shall be paid by the distributor alone. This indicates that facilities for distribution of gas may constitute a gas works within the meaning of the statute even though the commodity is manufactured or produced by another.

The Attorney General relies upon Utilities Natural Gas Co. v. State, Texas Civ. App., 118 S.W. 2d 927, 929, where an attack was made upon a levy of the tax upon a company deliv-

ering gas by pipe line to a single customer within the city. In its opinion upholding the tax, the court expressed the view that "the term 'gas plant' as used in the statute includes any method or manner whereby the business of selling and distributing gas is carried on within any incorporated city or town," and cited Dallas Gas Co. v. State, Texas Civ. App., 261 S.W. 1063, wr. ref., as supporting such conclusion. This cannot be regarded as an authoritative construction of the statute for the following reasons: (1) the company was using the customary method of delivering gas by pipe line, and the Court of Civil Appeals was not considering other and different methods of delivery; (2) the decision of the Court of Civil Appeals was reversed and judgment rendered that the company was not subject to the tax, because it was concluded that delivery of gas by pipe line to a single customer in a city was not intended by the Legislature to be comprehended by the term "distribution" as used in the statute. 133 Texas 313, 128 S.W. 2d 1153; and (3) the Dallas Gas Case does not support the proposition for which it was cited.

To hold that the term "gas works" embraces any and every method whereby the business of selling and distributing gas is carried on, it would be necessary to say that the Legislature intended that the words should have no meaning or significance whatsoever. And apparently this is the position taken by the Court of Civil Appeals in the Utilities Case. It was there reasoned that since the statute does not define the term and thereby indicate the enterprise sought to be taxed, it was the intention to tax the business of selling and distributing gas by any method within the limits of an incorporated city or town. We cannot agree with this construction of the statute.

■ Every word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be given effect if reasonably possible. See 39 Texas Jur. 208, Sec. 112, and authorities cited therein. This rule is not altered by the fact that the Legislature has not defined a particular word or phrase, and in the absence of such a definition the words of the enactment will usually be given their ordinary meaning. The tax now under consideration is imposed only upon those who own, operate, manage or control a gas works located within an incorporated town or city and used for local sale and distribution. It seems clear to us that one who does not own, operate, manage or control a gas works is not subject to the tax, and hence that the

Legislature did not intend to tax the sale and distribution of gas by any and every method.

■ What then is the meaning of "gas works" as used in the statute? We have pointed out that the phrase must be given a broader meaning than is accorded to it by the dictionary definitions, but that the Legislature evidently did not intend to include any and every method of distributing gas. In addition to the dictionary definitions, the term is commonly used to refer not only to a plant where gas is manufactured or processed but also to the system of mains and laterals by means of which the commodity is usually delivered by a gas distributor to the premises of customers. It is our opinion that this is the sense in which the term is used in the statute, and that the Legislature did not intend to exact the tax of one who merely stores gas and delivers the same to its customers by tank truck or in containers. We hold, therefore, that the term "gas works" means either: (1) an establishment in which gas is manufactured, produced or processed, or (2) a distribution system consisting of pipes through which the gas flows and is delivered to the premises of consumers. This construction gives effect to the legislative intent as revealed by the language of the entire statute.

■ Respondents also argue that the departmental construction of the statute should be adopted. Opinions of the Attorney General issued in 1941 and 1942 construed Art. 7060 as applicable to butane distributors having storage tanks in an incorporated town and delivering the product by pipe line or tank truck to customers in such town. In reaching this conclusion, the Attorney General relied upon the definition of "gas works" set out in the opinion of the Court of Civil Appeals in the Utilities Case. As previously indicated, we think this definition is too broad and does violence to the plain provisions of the statute. While an interpretation by the Attorney General of a doubtful or ambiguous statute will usually be given considerable weight, the same will not be adopted by the courts when contrary to the intention of the Legislature as disclosed by the provisions of the act.

■ It should also be noted that while there are over nine hundred butane dealers operating in the State, only four are paying taxes under the statute. The record does not disclose how many of the dealers doing business in Texas have storage facilities in an incorporated town, or whether the four who are paying the tax deliver their products by pipe lines or by tank

trucks. It appears, however, that the department charged with the administration of the act has made no effort to ascertain whether the tax is being paid by all who would come under the provisions of the statute as construed by the Attorney General. The construction of a revenue measure by the Attorney General is entitled to little consideration when the same has not been consistently and uniformly applied and enforced by the department responsible for the administration of the law.

Since petitioner does not own, operate, manage or control a gas works in Rankin, the provisions of Art. 7060 do not require the payment of a tax upon its receipts from the sale of liquefied petroleum gas in such town. The judgments of the courts below are reversed, and judgment is here rendered for petitioner.

Opinion delivered January 23, 1957.

Rehearing overruled February 27, 1957.