

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS



Overruled by WM 159
where conflicts

WILL WILSON
ATTORNEY GENERAL

August 11, 1961

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Dear Mr. Calvert:

Opinion No. WW-1111

Re: Whether, under the sub-
mitted facts Houston
Pipe Line Company has
been engaged in operating
a "Gas Works". . ."for
local sale and distribu-
tion", so that its receipts
are taxable under Art.
7060, V.C.S., and related
question.

You have asked three questions concerning the application
of the gross receipts tax provided for under Article 7060,
V.C.S., (now Article 11.03, Title 122A, Taxation-General) to
certain operations of the Houston Pipe Line Company, in connec-
tion with an audit of this company by your office. Specifically,
the questions asked and the statements of fact furnished relate
to certain operations of Houston Pipe Line Company during the
audited period in the incorporated areas of Texas City and
Houston. With reference to these facts, you ask the following:

"Your opinion is requested as to
whether or not under the facts sub-
mitted, Houston Pipe Line Company has
been engaged in operating a 'gas works'
. . .' for local sale and distribution
. . .' at Texas City so that its re-
ceipts are taxable under Article 7060,
Texas Civil Statutes, now Article 11.03,
Title 122A, Taxation-General.

"Two questions arise concerning Houston
Pipe Line Company's business in Houston.

"First: In view of the definition of
'gas works' as used Article 7060, R.C.S.,
in the Eddins-Walcher Butane Company
v. Calvert, 298 S.W.2d 93, 96 (Texas
Supreme Court, 1957), as '. . . a plant
where gas is manufactured or processed
. . .' or '. . .the system of mains and
laterals by means of which the commodity

is usually delivered by a gas distributor
to the premises of customers. . .' can
the sales of gas by Houston Pipe Line
Company through facilities owned, operated,
managed and controlled by Houston Natural
Gas Corporation be considered in determining
whether Houston Pipe Line Company is subject
to the tax?

"Second:   In the event the first question
is answered in the affirmative, are these
'few instances' of gas delivered sufficient
to subject Houston Pipe Line Company to
the tax for the periods in question?"

1.   It appears that prior to November, 1956, Houston Pipe
Line Company and Houston Natural Gas Corporation were unrelated
corporations having different stockholders, officers and directors.
Houston Pipe Line Company had been the principal supplier for
Houston Natural Gas Corporation, making city gate deliveries to
Houston Natural Gas Corporation at several cities in Texas.   During
this time (up until November, 1956) the relationship between Houston
Pipe Line Company and Houston Natural Gas Corporation was purely
contractual in nature.

2.   In November, 1956, Houston Natural Gas Corporation pur-
chased Houston Pipe Line Company from Atlantic Refining Company.
Although 100% of the stock was purchased, Houston Natural Gas
Corporation's acquisition took the essential form of a purchase
of assets, by means of the formation of a new company, first
chartered in 1956, with the former Houston Pipe Line Company
surrendering its charter, dissolving and going out of business,
and the new company, subsequently changing its name to the
abandoned name "Houston Pipe Line Company" then remaining with
the former business and assets of the previous Houston Pipe Line
Company.

3.   Houston Pipe Line Company, both as presently constituted
and historically, is a "gas transmission line. . .serving various
gas distribution companies and industrial customers. . .".   Thus,
it appears that Houston Pipe Line Company picks up natural gas
at the well head and from gas gathering systems, and carries the
gas so gathered by long line, large diameter, high pressure pipe-
lines to city gates for delivery to Houston Natural Gas Corpora-
tion and other gas distribution companies.

4.   In addition to its city gate deliveries to gas distribu-
tion companies, a substantial part of the business of Houston
Pipe Line Company consists of selling gas in large quantities
to industrial and chemical plants located along its lines in the

Texas Gulf Coast area. In making these sales, Houston Pipe Line Company employs laterals from its high pressure main lines, rather than an extensive grid system of low pressure gas mains and services. It does not odorize the gas in question nor does it assume the duty of serving all customers on its lines desiring service. Houston Pipe Line Company competes for this business with other gas transmission companies, and with alternative fuels such as fuel oil, etc. Houston Pipe Line Company sells its gas by negotiated contract rather than by published rate schedules; obtains no franchises from cities and towns touched or crossed by its transmission lines, and submits to no city or local regulation of its rates on these industrial sales. Reports to the Railroad Commission of Texas by Houston Pipe Line Company are made as required of gas transmission companies, rather than those required of gas distribution companies.

5. Since 1947, the corporate limits of Houston and Texas City have been extended so as to bring certain industrial plants served by Houston Pipe Line Company into the city limits. By contracts entered into by and between Houston Pipe Line Company and Houston Natural Gas Corporation, (in 1950, prior to their affiliation in 1956) a "transportation fee" representing the sales profit on a number of such customers was transferred from Houston Pipe Line Company to Houston Natural Gas Corporation, together with the duty to read meters, make service calls, change and compute charts, etc. Thereafter, Houston Natural Gas Corporation has paid the tax due under Art. 7060 on the sales to these customers--limited, however, in some instances, to the "sales profit" or "transportation fee" received by it. The agreements in question have been continued in force following the events of November, 1956, related above.

6. The contracts between Houston Pipe Line Company and Houston Natural Gas Corporation are questioned. The second question of your request asks whether the sales to customers transferred from Houston Pipe Line Company to Houston Natural Gas Corporation by the contracts in question can be considered in determining whether Houston Pipe Line Company is subject to the tax.

Answering this question first, we are of the opinion that these contracts, being based upon what appears to be sufficient consideration and having been entered into when the two companies were unaffiliated and at arms length, are not subject to question. However, in the view we take of the law, even an affirmative answer to this question would not make Houston Pipe Line Company subject to the tax on its sales inside the City Limits of Texas City and Houston during the periods in question.

Your request for an opinion quite properly recognizes that the recent Supreme Court opinion, Eddins-Walcher Butane Company v. Calvert, 156 Tex. 587, 298 S.W.2d 93 (1957) is of controlling importance in this matter. This opinion clearly shows that it is not the number of customers in a city, but the type or kind of business conducted, which determines whether the tax imposed by Art. 7060, V.C.S., applies. While this opinion might well end with this observation, it may be helpful to review the legislative history of Article 7060 and a number of cases in which the distinction is recognized between the operation of a local gas distribution plant, on the one hand, and a gas transmission system incidentally making industrial sales of gas along its line, on the other hand.

Under the statute the question is whether Houston Pipe Line Company has been engaged, in the cities of Houston and Texas City, in the occupation of "owning, operating, managing or controlling any gas. . .works. . .located within any incorporated town or city in this State, and used for local sale and distribution in said town or city. . ." (Formerly Article 7060, Texas Civil Statutes; now Article 11.03, Title 122A, Taxation-General, Texas Civil Statutes).

In Eddins-Walcher Butane Company v. Calvert, 156 Tex. 587, 298 S.W.2d 93 (1957), Art. 7060, V.C.S., was held not to apply to numerous sales of gas inside the corporate limits of a town unless such sales were accomplished by means of ". . .A plant where gas is manufactured or processed. . ." or ". . .The system of mains and laterals by means of which the commodity is usually delivered by a gas distributor to the premises of customers. . .". In that case, the Supreme Court held that a butane distributor, delivering butane to the premises of its customers inside the city limits by means of trucks, did not owe the tax. Attorney General's Opinion No. O-3776 of August 1, 1941, mentioned as authority in Mr. McKinzie's letter dated September 23, 1960, was overruled by the Court.

In Utilities Natural Gas Company v. State, 133 Tex. 313, 128 S.W.2d 1153 (1939) the Texas Supreme Court held that sales by a long line, high pressure pipe line transmission company to an electric power company inside Victoria, as well as to a local distributing company, did not make the transmission company a company which was itself engaged in "local sale and distribution".

It should be noted, additionally, that in Thompson v. United Gas Corporation, 190 S.W.2d 504 (Tex.Civ.App., 1945, err.ref.), in determining the applicability of Article 6060, V.C.S., commonly known as the "pipeline tax", the Court recognized clearly the division of the gas industry into three distinct occupations-- severance and gathering, transportation or transmission by pipeline, and local distribution.

In _Dallas Gas Co. v. State_, 261 S.W. 1063 (Tex.Civ.App., 1924) err.ref., the meaning of "gas plant" under the statute in force prior to the passage of Art. 7060, V.C.S., was held to contemplate the operation of a public utility regulated by the municipality. In upholding the constitutionality of the tax imposed by that statute, the Court held (261 S.W. 1063, 1069):

> "But the occupation of operating a gas plant is one possessing characteristics peculiarly applicable to itself, and in no sense similar in character to that of selling real estate. _Such business is usually recognized as a public utility over which municipalities, as in the instant case, exercise powers of regulations._ Its very nature, to enable its successful economic operation, demands a monopoly in its community."

That "local sale and distribution" has the meaning of public utility serving all comers, including _individual consumers_ has been clearly recognized by the Attorney General, in Opinion WW-810, dated March 4, 1960. In discussing the _Eddins-Walcher_ case, this opinion states:

> "The definition of 'distribution' was added to by _Eddins-Walcher Butane Company v. Robert S. Calvert_, 156 Tex. 587, 298 S.W.2d 93 (1957). In an opinion by Justice Walker, the Texas Supreme Court held that the term 'gas works', as used in Art. 7060, V.A.C.S., meant (1) an establishment in which gas is manufactured, produced or processed, or (2) a distribution system consisting of pipes through which gas flows and is delivered to the premises of _consumers_. In light of these two cases, it is submitted that 'distribution' means transfer or possession of gas to various _consumer_ individuals or concerns in an incorporated city or town. . ."

In _City of St. Louis v. Mississippi River Fuel Corporation_, 97 F.2d 726 (C.C.A. 8, 1938) Mississippi River Fuel Corporation, a high pressure transmission line having some 19 industrial customers in the City of St. Louis under contract, was, nevertheless, held not to be engaged in "distributing and selling. . . gas. . .for public use" within the meaning of a taxing ordinance of the City of St. Louis. The 8th Circuit Court of Appeals held, in affirming a judgment in favor of the gas company (97 F.2d 726, 730):

> "We conclude that under Missouri
> law the term 'for public use,' as used
> in the ordinance under consideration,
> means the sale of gas <u>to the public
> generally and indiscriminately, and
> not to particular persons upon special
> contract</u>. This construction of the
> phrase is the one generally understood
> and applied."

The Court of Appeals thus adopted the same reasoning as the
Texas Court in <u>Dallas Gas Co. v. State, supra</u> (261 S.W. 1063)--
that the operation of a gas plant requires a public utility
operation; not simply sales to particular persons upon special
contract.

The same holding was made with respect to the Mississippi
River Fuel Corporation even following an amendment of the taxing
ordinance so as to tax the "selling or distributing of. . .gas
. . .for heating, lighting, power and refrigeration" and deleting
the words "for public use." <u>Mississippi River Fuel Corporation
v. City of St. Louis</u>, 57 F.Supp. 549 (E.D. Mo., 1944). In this
second <u>Mississippi River Fuel</u> case, the Court held (57 F.Supp.
549, 563):

> "In the gas industry the ordinary
> and usual classification as to purposes
> for which gas is sold is domestic,
> commercial and industrial.
>
> ". . . .
>
> "When a legislative act is passed
> with reference to a particular trade
> or business and words are used which
> those conversant with the trade or
> business know and understand and have
> a particular and definite meaning, then
> the words are to be construed as having
> that particular and definite meaning,
> though such meaning may differ from the
> ordinary meaning of the words."

Incidental deliveries of gas or electric power by companies
whose primary business is <u>not</u> distribution, will not be held to
constitute distribution. <u>State v. North Itasca Electric Co-op</u>,
78 N.W.2d 54 (Minn., 1956). In that case the Court held an
Electrical Co-op operating a high-voltage transmission line
between two main points, but which also made deliveries to
two sub-stations along the way, <u>was not</u> engaged in "distribution"
of electrical power, but was a "transmission company". The Court
said:

"The distinction between the terms
transmission lines and distribution lines
as used in sections 273.42 and 273.41
lies in the primary objective and purpose
for which the line is used. It is apparent
that the primary objective and purpose of
the 22,000-volt line in question is the
transfer of large quantities of electrical
energy in bulk to locations from which
it may be distributed or allocated to
consumers by means of other lines. Accord-
ingly, we hold that the line in question
is a transmission line. . ."

In this connection, Attorney General's Opinion No. WW-909,
dated August 29, 1960, has recognized that the primary occupation
of the taxpayer is the crucial test for application of the statute.
Such opinion held that incidental distribution of gas in a "few
instances" by the Air Force at a base located inside the city
limits of a town does not make such facility one engaged in local
sale and distribution so as to occasion a tax under Art. 7060,
V.C.S.

In the light of the foregoing authorities, the question of
whether a transmission company's sales within the incorporated
limits of any city or town constitutes use of a "gas works"
engaging in "local sale and distribution" cannot be answered
merely by counting the number of its customers. In none of the
authorities discussed above has the number of customers, by
itself, been deemed significant except that under no circumstances
can a sale and delivery to one customer make the seller liable for
the tax. Utilities Natural Gas Company v. State, 133 Tex. 313,
128 S.W.2d 1153 (1939).

It appears affirmatively from the facts furnished to us with
your opinion request that the occupation of Houston Pipe Line
Company in the cities of Houston and Texas City is that of a
transmission company and not that of a local distribution company
as those distinct categories are recognized in the authorities
cited above. For example, Houston Pipe Line Company (1) maintains
high pipeline pressures on gas crossing into city limits to point
of delivery; (2) has no "mains or services" or "system of mains
and laterals by means of which the commodity is usually delivered
by a gas distributor to the premises of customers" or other net-
work for wide-spread distribution of gas; (3) does not odorize
its gas; (4) obtains no franchise from the City of Houston or the
City of Texas City; (5) submits to no local regulation of its
rates and policies; (6) makes the sales in question competively
upon negotiated contracts rather than by published rate schedules,
and (7) in no manner holds itself out as a public utility to serve

individual consumers as would be absolutely necessary for a distribution company and a condition of its franchise.

## S U M M A R Y

Houston Pipe Line Company has not been engaged in operating a "gas works. . .for local sale and distribution. . ." at Texas City and Houston and, therefore, its receipts from its sales of gas therein are not taxable under Article 7060, V.C.S.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _____
H. Broadhurst
Assistant

JHB:cm

APPROVED:

OPINION COMMITTEE:
Henry Braswell, Chairman

Grady Chandler
Elmer McVey
John C. Steinberger
Fred Werkenthin

REVIEWED FOR THE ATTORNEY GENERAL
By: Houghton Brownlee, Jr.