



This Opinion Overrules Opinion WW - 1111 where conflicts

# The Attorney General of Texas

May 2, 1984

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of Public Accounts
P. O. Box 2243
Austin, Texas    78767

Opinion No.  JM-150

Re:   Taxability  of  sales  of
natural gas by a company to
industrial  consumers  within a
city under chapter 182 of the
Tax Code

Dear Mr. Bullock:

You ask whether certain sales of natural gas by a company to
industrial consumers within a city should be taxed pursuant to chapter
182 of the Tax Code.  The determination as to whether the sales at
issue are taxable is a factual one.  On the basis of the facts which
you have submitted to us, we conclude that they should be taxed.

Section 182.022 of the Tax Code imposes a gross receipts tax on
each utility company located in an incorporated city or town having a
*population of more than 1,000, according to the last federal census
next preceding the filing* of the report.  Section 182.021 of the Tax
Code defines "utility company" and "business" for purposes of this
chapter:

> (1)  'Utility company' means a person who owns
> or operates a gas, electric light, electric power,
> or water works, or water and light plant used for
> local sale and distribution located within an
> incorporated city or town in this state.
>
> (2)  'Business' means the providing of gas,
> electric  light,  electric  power,  or  water.
> (Emphasis added).

You have provided us with the following facts:

> A division of a larger division of the company
> in question (1) transports natural gas by a
> high-pressure pipeline into the Houston Ship
> Channel; (2) has a system of meters and lateral
> lines off this pipeline, which it uses to deliver
> the gas under reduced pressure to industrial

consumers in Houston; (3) odorizes the gas under requirement of the Texas Railroad Commission; (4) has an industrial franchise agreement with the city of Houston to sell gas to the city of Houston and industrial users within the city; (5) agrees as part of obtaining the Houston franchise that 'it is understood that lawful power vested by law in the city to regulate all public utilities within the city within the limits of the constitution and laws and to require all persons or corporations to discharge the duties and undertakings for the performance of which this franchise was made, is preserved . . .'; (6) makes the sales under negotiated contracts rather than by published rate schedules but files rates with the city of Houston in accordance with the Public Utility Regulatory Act; (7) does not hold itself out as selling gas to residential consumers within the city of Houston; (8) sells gas to more than twenty (20) industrial consumers in the city of Houston. In addition, the larger division sells gas in Texas to residential consumers in other incorporated cities and towns having populations of more than 1,000 and reports and remits tax under chapter 182 for these cities and towns.

You wish to know whether, under these facts, such sales are taxable. At the outset we note that the gas industry is conventionally divided into three distinct occupations: (1) severance (or production) and gathering; (2) transporting or transmission by pipeline, and (3) local distribution. See Thompson v. United Gas Corporation, 190 S.W.2d 504, 506 (Tex. Civ. App. - Austin 1945, writ ref'd); Attorney General Opinion WW-1111 (1961).

In Eddins-Walcher Butane Company v. Calvert, 298 S.W.2d 93, 96 (Tex. 1957), the Texas Supreme Court declared that "gas works" for purposes of article 7060, V.T.C.S., (the predecessor to chapter 182, Tax Code) refers to either: "(1) an establishment in which gas is manufactured, produced, or processed, or (2) a distribution system consisting of pipes through which the gas flows and is delivered to the premises of consumers." (Emphasis added). The court held that a butane distributor, delivering butane to the premises of its customers inside the city limits by means of trucks, was not subject to the tax.

In setting forth the scope of the statute, the Texas Supreme Court declared:

[i]t is expressly provided that the tax shall be levied only once on the same commodity, and that

> where the commodity is produced by one person and
> distributed by another, the tax shall be paid by
> the distributor alone. This indicates that
> facilities for the distribution of gas may
> constitute a gas works within the meaning of the
> statute even though the commodity is manufactured
> or produced by another.

Eddins-Walcher Butane Company v. Calvert, supra, at 95.

Clearly, the operation at issue is not "an establishment in which gas is manufactured, produced or processed;" the issue is whether it is "a distribution system consisting of pipes through which the gas flows and is delivered to the premises of consumers." Specifically, the issue to be resolved is whether the operation at issue is a local gas distribution system and therefore subject to the tax or whether it is a gas transmission system incidentally making industrial sales of gas along its line. In our opinion, the operation at issue, while bearing some of the usual indicia of a gas transmission system, can more fairly be described as a gas distribution system for purposes of this tax. It is therefore subject to the tax.

In briefs submitted on behalf of the operation sought to be taxed, it is stated that, while a substantial part of the operation's business consists of selling gas in large quantities to industrial and chemical plants located along its lines, the majority of its business consists of picking up and transmitting natural gas from the wellhead and from gas gathering systems to the parent corporation's main system transportation division. Further, it is urged that, under the given facts, the operation is substantially similar to the operation which was held to be non-taxable in Attorney General Opinion WW-1111 (1961). We disagree. We conclude that Attorney General Opinion WW-1111 was, in part, incorrectly decided.

In that opinion, this office concluded that a company engaged in certain activities was not operating a "gas works . . . for local sale and distribution" and was therefore not taxable. Those activities were: (1) maintaining high pressure pipelines crossing into the city to the point of delivery; (2) having no network of mains and laterals by means of which the gas is delivered; (3) not odorizing the gas; (4) obtaining no franchise from the city; (5) submitting to no local regulation of its rates and policies; (6) making the sales at issue competitively upon negotiated contracts rather than by published rate schedules; and (7) in no manner holding itself out as a public utility to serve individual consumers.

The operation at issue here does bear some of the indicia of a transmission company. It too makes its sales under negotiated contracts, rather than by regulated rates. It transports gas into the

Houston Ship Channel by means of a high pressure pipeline and sells gas at reduced pressure to industrial consumers.  It does not hold itself out as selling gas to residential consumers within the city; it is not a "public utility" in the sense in which the phrase is commonly understood.  On the other hand, it bears several features of a distribution system.  It has a system of meters and lateral lines off the pipeline which it uses to deliver gas, although it does not have an extensive grid network which is characteristic of a distribution company delivering gas to residential consumers.  The "industrial franchise agreement" by means of which the city granted to the company the authority to lay mains and laterals under city-owned and controlled right-of-way provides that the company sell gas to the city and to industrial users within the city.  The agreement does not purport to require the company to sell gas to anyone who wants it, but the agreement contains no limitations on the number of industrial consumers to which it sells.  The company sells gas under contract to more than twenty industrial consumers within the city.

Attorney General Opinion WW-1111, cites Dallas Gas Company v. State, 261 S.W. 1063, 1069 (Tex. Civ. App. - Austin 1924, writ ref'd), in support of the proposition that the sort of business sought to be taxed "is usually recognized as a public utility over which municipalities . . . exercise powers of regulations."  Such reliance is misplaced.  The language from the Dallas Gas case upon which Attorney General Opinion WW-1111 relies did not define the scope of the statute.  It was argued in the Dallas Gas case that the predecessor statute to chapter 182 of the Tax Code violated article VIII, sections 1 and 2 of the Texas Constitution because the statute imposed one rate of taxation upon businesses operating in cities of over 25,000 population and a lesser rate in cities of population of 10,000 to 25,000.  Section 1 of article VIII of the Texas Constitution requires, in pertinent part, that "[t]axation shall be equal and uniform."  Section 2 provides in pertinent part that "[a]ll occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax."  In support of the proposition that sections 1 and 2 were violated, appellant cited a Kentucky case in which the Supreme Court of Kentucky struck down an occupation tax imposed upon real estate agents classified on the basis of the population size of the cities in which they engaged in business.  The language from the Dallas Gas case upon which Attorney General Opinion WW-1111 relied was employed by the court for the sole purpose of distinguishing the occupations of real estate agent and operator of a gas works.  Citing the "peculiar nature of the occupation involved" and the principle that acts of the legislature should be upheld unless in clear violation of the state or federal constitution, the court upheld the tax.

While it is certainly the case that the tax reaches distributors engaging in business properly characterized as a public utility, it

does not follow that such tax can be imposed on <u>only</u> those distributors who sell to residential consumers. The act itself defines "utility company" to refer to, <u>inter alia</u>, a "gas . . . works <u>used for local sale and distribution.</u>" Tax Code §182.021. The definition imposes no restriction on the imposition of the tax, which would limit it only to those distributors selling to residential consumers. Moreover, the Texas Supreme Court has defined "distribution" in the following way, and clearly did not limit its reach to those selling gas to residential consumers:

> This term as used does not mean the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city. It means the transfer of possession of gas <u>to various individuals or concerns</u> in the city. Any other construction of the term would, in our opinion, involve a departure from the legislative intent. (Emphasis added).

<u>Utilities Natural Gas Co. v. State</u>, 128 S.W.2d 1153, 1155 (Tex. 1939).

The operation here sought to be taxed clearly transfers the possession of gas to various individuals or concerns but without selling gas to residential consumers. However, were we to hold that it is necessary, for the imposition of this tax, that the business taxed be a "public utility," we can say that the operation sought here to be taxed may properly be so characterized. <u>See</u> Tax Code §182.021(1) (definition of "utility company"). The so-called "franchise agreement" which the company executed with the city clearly provides that

> it is understood that lawful power vested by law in the city to regulate all public utilities within the city, within the limits of the constitution and laws, and to require all persons or corporations to discharge the duties and undertakings for the performance of which this franchise was made, is reserved . . . .

Houston, Texas Ordinance No. 69-1929, §13 (1969). Moreover, while the operation does not serve residential consumers, the franchise agreement arguably permits the operation to serve both the city and any and every industrial consumer within the city. Such an operation could fairly be denominated a "utility company" for purposes of this tax.

It is further urged, again in reliance upon Attorney General Opinion WW-1111 that the primary occupation of the taxpayer is the

crucial test for application of the statute.  In support of this assertion, Attorney General Opinion WW-1111 cites Attorney General Opinion WW-909 (1960).  Again, such reliance is misplaced.  In Attorney General Opinion WW-909, the issue was whether an Air Force base located within the limits of an incorporated city which purchased gas through a single meter located at the base boundary and consumed all of the gas except for a certain amount which was sold to private concessionaires using gas on the base was in the business of operating a "gas works" for purposes of the predecessor statutes to chapter 182 of the code.  The opinion concluded that it was not:

> Construing the two cases together [the Eddins-Walcher case and the Utilities Natural Gas Co. case], it appears that to come within the terms of [chapter 182 of the Tax Code], it is necessary that a tax payer be engaged in the business of operating, managing or controlling an establishment in which gas is manufactured, produced or processed for local sale and distribution, or in the business of owning, operating, controlling or managing a distribution system consisting of pipes through which gas flows and is delivered to the premises of consumers. The Air Force Base is not in either such business. In all but a few instances, the Air Force, or one of its components, is the consumer of the gas. (Emphasis added).

Id. at 3.  The opinion finally concluded that the tax liability should be imposed, not on the Air Force, but rather on the gas company which sold the gas to the base.

The opinion did not hold that, since the Air Force base is not engaged in the primary business of distributing gas, it cannot be considered to be a "gas works" for purposes of the tax even though it made incidental sales to concessionaires on base.  Rather, the opinion held that the gas company was the distributor and that the air base was the ultimate consumer.  A similar rationale was employed and result reached in an earlier opinion, Attorney General Opinion WW-810 (1960).  In that opinion, it was held that a corporation distributing gas to a gas distribution system owned and operated by the city of Houston, the latter being the final distributor of the gas that it received, is not liable for a tax on such sales.  The opinion concluded that the city, as final distributor and not as consumer, would be liable for the tax were it not expressly exempted by the statute by virtue of the fact that it is a political subdivision.  The gas company was not the actual final distributor; hence, it was not liable for the tax.  Likewise, in Attorney General Opinion WW-909 the

Air Force base was held to be the consumer and not the distributor. Accordingly, it was not liable for the tax.

We therefore conclude that the tax does not, as Attorney General Opinion WW-1111 suggests, reach only those whose primary business is manufacturing and distributing gas. The tax reaches even incidental sales by a company whose primary business is transporting the gas. To the extent of conflict, Attorney General Opinion WW-1111 (1951) is hereby overruled. Accordingly, we conclude that the operation sought to be taxed can fairly be described as engaging in the distribution of gas and receipts from the sale of its gas are therefore subject to the tax imposed by chapter 182 of the Tax Code.

## S U M M A R Y

Under the facts presented, receipts from the sale of natural gas to industrial consumers in a city are subject to the tax imposed by chapter 182 of the Tax Code.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton