OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS


September 28, 1999

The Honorable René O. Oliveira
Chair, House Committee on Ways & Means
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0118

Re: Whether it is permissible to use sales and use taxes levied under section 4B of the Development Corporation Act of 1979, TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 1999), for other than project costs (RQ-1047)

Dear Representative Oliveira:

On behalf of the cities of McAllen and San Benito, you request an opinion from this office regarding the expenditure of sales and use taxes levied under section 4B of the Development Corporation Act of 1979, TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 1999) (the "Act").

You inform us that for several years a development corporation has provided section 4B tax proceeds to private community organizations. These tax proceeds, you state, are generally not expended for "projects." Your request suggests that the expenditures are characterized as expenditures for "promotional purposes" simply because they do not relate to projects. Accordingly, we understand you to first ask whether section 4B tax proceeds may be expended for items other than project costs. Because section 4B tax proceeds may only be used to pay or finance project costs, we conclude that they may not be expended for "promotional purposes" unrelated to projects.

The Act authorizes cities, counties, or conservation and reclamation districts to create industrial development corporations to finance projects that further the economic development purposes of the Act. *Id.* §§ 2(12) (Vernon 1987); 3, 4A, 4B, 21 (Vernon Supp. 1999). The declared purpose of the Act is to authorize measures, especially with respect to financing, that promote the public's economic welfare by the "securing and retaining of business enterprises and the resulting maintenance of a higher level of employment, economic activity, and stability." *Id.* § 3(3) (Vernon Supp. 1999). Originally, the Act limited payment of obligations incurred by a development corporation to revenues derived from the proceeds of bonds or revenues derived from the sale or lease of a project or repayment of a loan made by the development corporation to finance the project. *Id.* §§ 22 (Vernon 1987); 25(e) (Vernon 1987 & Supp. 1999).[1] Thus, no "public moneys" were involved in development corporation transactions under these original provisions. Tex. Att'y Gen.

---

[1]*See also* Act of May 19, 1979, 67th Leg., R.S., ch. 700, §§ 21, 22, 23, 1979 Tex. Gen. Laws 1675, 1683-84.

Op. No. MW-85 (1979). But sections 4A and 4B, more recently enacted provisions of the Act, authorize an eligible city to collect a sales and use tax, subject to voter approval, for the use of a development corporation created by the city under these sections. TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 4A(a), (b), (d), 4B(a), (d), (g) (Vernon Supp. 1999). Accordingly, a city may establish a development corporation under the Act's general provisions or under section 4A or section 4B. For the purposes of this opinion, we focus on sections 4A and 4B development corporations because your questions concern the use of sales and use taxes.

Although both sections 4A and 4B authorize a city to establish a development corporation and levy a sales and use tax, they differ in some important respects. Section 4A applies to a city located in a county with a population of 500,000 or fewer, or that has a population of fewer than 50,000. *Id.* § 4A(a). It authorizes a section 4A development corporation to undertake and use the sales tax proceeds for most of the facilities constituting projects under the Act's general provisions, namely, section 2(10). Section 2(10) projects generally comprise the following: (1) manufacturing, industrial, transportation, sewage or solid waste disposal, recycling, air or water pollution control, water, distribution centers, small warehouse, or commercial facilities or (2) those facilities related to the development or redevelopment of a closed or realigned military base. *Id.* §§ 2(10), 4A(f). Additionally, the Seventy-sixth Legislature enacted several measures amending the section 2(10) definition of a project to include higher education facilities;[2] "job training required or suitable for the promotion of development and expansion of business enterprises and other enterprises";[3] educational facilities, job creation, retention, and job training facilities, and targeted infrastructure.[4] A section 4A development corporation, however, may not generally undertake a project whose primary purpose is to provide transportation, solid waste disposal, or air or water pollution control facilities. *Id.* § 4A(i). Additionally, section 4A now allows a development corporation to expend tax proceeds for any project authorized under section 4B, provided the city that created the development corporation obtains prior voter approval for any such expenditure. *Id.* § 4A(s)(1).[5]

Section 4B applies to a city that is located in a county with a population of 750,000 or more, or that has a population of 400,000 or more. *Id.* § 4B(a)(1)(A)-(C). It also applies to a city "to which Section 4A . . . applies," which we understand to mean that any city authorized to create a development corporation under section 4A may create a development corporation under section 4B. *Id.* § 4B(a)(1)(D). Unlike section 4A, section 4B authorizes a development corporation to use sales tax proceeds for all the section 2(10) projects. *Id.* § 4B(a)(2)(A). It also authorizes use of the tax

---

[2]*See* Act of May 14, 1999, 76th Leg., R.S., S.B. 1289, § 2 (to be codified as an amendment to TEX. REV. CIV. STAT. ANN. art. 5190.6).

[3]*See* Act of May 26, 1999, 76th Leg., R.S., H.B. 1916, § 1 (to be codified as an amendment to TEX. REV. CIV. STAT. ANN. art. 5190.6).

[4]*See* Act of May 31, 1999, 76th Leg., R.S., H.B. 3029, § 1 (to be codified as an amendment to TEX. REV. CIV. STAT. ANN. art. 5190.6). We note that House Bill 3029 also authorizes creation of a new section 4E development corporation to undertake spaceport facilities. *Id.*

[5]*See* Act of May 22, 1997, 75th Leg., R.S., ch. 551, § 2, 1997 Tex. Gen. Laws 1929, 1951; Act of June 1, 1997, 75th Leg., R.S., ch. 958, § 1, 1997 Tex. Gen. Laws 2995.

proceeds for sports, entertainment, tourist, convention center, public park, housing, or other similar public works type facilities. *Id.* §§ 2(10), 4B(a)(2)(A), (B), (C). But also unlike section 4A, only tax proceed expenditures for sports venue projects and related infrastructures require specific prior voter approval. *Id.* § 4B(a-3)(1)-(3). Accordingly, a section 4B corporation has a greater number *of project types it may finance with fewer restrictions insofar as voter approval is concerned.*

You ask about a development corporation established, and sales and use taxes levied, under section 4B. A development corporation is governed by the section under which it is created, and use of the sales and use tax is governed by the section under which it is levied. Section 4A provides that a "city may create a corporation under this Act governed by this section," which "has the powers and is subject to the limitations of a corporation created under other provisions of [the] Act" but "[t]o the extent of a conflict between this section and another provision of [the] act, this section prevails." *Id.* § 4A(b)(1). Section 4B provides similarly with respect to a development corporation created under its provisions. *Id.* § 4B(b). As discussed in greater detail below, section 4B specifically limits the types of expenses for which sales and use tax revenues may be expended.

Subsection (g) of section 4B specifies the purposes for which section 4B tax proceeds may be used, namely, to:

> (1) *pay the costs of projects* of the types added to the definition of that term by Subsection (a) of this section; or

> (2) pay the principal of, interest on, and other *costs relating to bonds or other obligations issued by the corporation to pay the costs of the projects* or to refund bonds or other obligations issued to pay the costs of projects.

*Id.* § 4B(g) (emphasis added). "Cost," as applied to a project, is broadly and generally defined to mean all direct or incidental costs associated with the acquisition, construction, improvement, or equipping of a project, including financing charges and administrative expenses. *See id.* § 2(4). None of these *expressly authorized costs include "promotional" costs unrelated to projects.*

Under the express provisions of section 4B, we conclude that section 4B tax proceeds may only be used to pay or finance project costs. Section 4B(g) expressly provides that the sales and use tax proceeds may be used to pay directly the costs of the authorized projects or pay debt service on bonds or other obligations issued to finance the costs of projects. As section 4B(g) specifically names those purposes for which the section 4B tax proceeds may be used, any purpose not named is expressly excluded. *See State v. Mauritz-Wells Co.,* 175 S.W.2d 238, 241 (Tex. 1943) (express mention or enumeration of particular person, thing, consequence, or class is equivalent to express exclusion of all others). The Act, and in particular section 4B, is a detailed and comprehensive scheme for providing measures to finance projects that promote the Act's purposes, including economic development. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 2(4), (10), 4A, 4B, 21-31 (Vernon 1987 & Supp. 1999). If the legislature intended development corporations to use the section 4B tax proceeds for other purposes, it would have expressly so provided as it did in section

4A. *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) ("'It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.'"); *see also State v. Kaiser*, 822 S.W.2d 697, 700 (Tex. App.–Fort Worth 1991, pet. ref'd) (legislative intent may be inferred from the fact that a statute does not contain a certain provision).

Subsection (b)(1) of section 4A specifically provides that "[a] corporation created under this section may spend no more than 10 percent of the corporate revenues for promotional purposes . . . ." This provision permits

> a development corporation such as [the Development Corporation of Abilene], operating under section 4A of the act, to spend sales and use tax proceeds for 'promotional purposes,' subject to the proviso of subsection (b)(1) that no more than 10 percent of corporation revenue may be spent for such purposes, and so long as the expenditures are otherwise consistent with the provisions of the act and applicable state law generally.

Tex. Att'y Gen. LO-94-037, at 2. Section 4B does not contain a provision similar to section 4A(b)(1) authorizing the use of tax proceeds for promotional purposes. An interpretation of section 4B that tax proceeds may be used for purposes not set out in subsection (g) would write into the statute language that is not there and render superfluous the words of limitation expressed in the statute.

Our construction of section 4B(g) that section 4B tax proceeds may only be used for project costs is supported by other provisions of section 4B that tie collection and use of the tax to payment of project costs. Subsections 4B(a-1), 4B(a-2) and 4B(n) require a development corporation to give public notice, call an election upon receipt of a petition signed by the requisite number of voters requesting such election, and hold a public hearing before undertaking or expending funds for any project costs. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-1), (a-2), (n) (Vernon Supp. 1999). These public accountability provisions would be rendered nugatory if the section 4B tax proceeds may be spent for promotional or other costs that are not project costs. Additionally, subsection (h) of section 4B provides that the principal amount of bonds and other obligations payable from the sales and use tax together with other costs of projects, excepting interest on bonds and other obligations, paid directly with sales and use tax proceeds, may not exceed $135 million. *Id.* § 4B(h). Again, this limit on the aggregate expenditures of section 4B sales tax proceeds would be meaningless if the tax proceeds may be expended for purposes other than project costs. Finally, subsection (i) of section 4B prohibits the collection of the sales and use tax after all bonds or other obligations issued to finance project costs have been fully paid or the amount necessary to fully pay them has been set aside in a dedicated trust. Clearly, collection of the sales and use tax is only authorized to the extent necessary to pay project costs.

We do not believe the authority of a section 4B corporation to use sales tax proceeds for purposes other than project costs (or rather the lack of statutory authority) is affected by the court's determination in *Gaut v. Amarillo Economic Development Corporation*, 921 S.W.2d 884 (Tex. App.–Austin 1996, no writ). In *Gaut*, the City of Amarillo had established the Amarillo Economic Development Corporation ("AEDC") and levied a sales and use tax under section 4A of the Act. *Gaut*, 921 S.W.2d at 885-86. At issue in *Gaut* was the validity of a contract executed by the AEDC and American Airlines whereby the AEDC made payments to the airline company to provide jet service to the City of Amarillo. *Id.* Gaut contended that the AEDC's payments to the airline company were illegal because the contract was not a project under the Act. *Id.* at 887. The court agreed that the "contract is not the type of project that involves the construction, acquisition, sale, lease, or purchase of a building" but disagreed that the AEDC "is limited to considering only projects as defined by" the Act. *Id.* The court noted that the AEDC had the power to contract and incur liabilities. *Id.* Given that authority and the "summary judgment evidence reflecting the probable enhancement to the Amarillo economy as well as the economic benefits to the residents of the Texas panhandle"[6] resulting from the jet service contract, the *Gaut* court concluded that the contract was within the stated purposes of the Act. *Id.* at 887-88.

*Gaut* does not influence our construction of section 4B for a number of reasons. First, *Gaut* considered only section 4A tax proceeds. The provisions regarding use of section 4A taxes differ from the parallel provisions regarding use of section 4B tax proceeds. Section 4A (f) provides that:

> On receipt of the proceeds of the sales and use tax imposed under this section from the comptroller, the city shall deliver the proceeds to the corporation *to use in carrying out its functions.* Tax proceeds may be used to pay the principal of, interest on, and other costs relating to the corporation's bonds . . . .

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(f) (Vernon Supp. 1999) (emphasis added).[7] Additionally, and most critically for the purposes of your question, subsection 4A(b)(1) specifically authorizes the use of tax proceeds for promotional purposes. *See id.* § 4A(b)(1); Tex. Att'y Gen. LO-94-037. Accordingly, by its terms, section 4A's authorization to use tax proceeds for any function of a development corporation—including payment of debt service and other costs relating to bonds issued to finance project costs and of promotional expenditures—is comparatively broad. *See id.* §§ 4A(b)(i) (section 4A corporation has powers and is subject to limitation under other provisions of Act except to extent of conflict), (i) (projects section 4A corporation may undertake), 23(4)

---

[6]The AEDC and American Airlines presented evidence showing that many Amarillo business people relied on jet service for their business operations. *Gaut*, 921 S.W.2d at 887. Several business people stated by affidavits that if jet service to Amarillo were to be discontinued, their businesses would relocate to other cities served by jet service. *Id.* Additionally, the evidence reflected that a scheduled American Quarter Horse Association convention with an attendance of 1400 persons would relocate if the jet service were no longer available. *Id.*

[7]House Bill 1916 amends this section to specifically authorize the use of the sales tax proceeds for expenses related to job training programs authorized under section 38 of the Bill. *See* Act of May 14, 1999, 76th Leg., R.S., S.B. 1289, § 3 (to be codified as an amendment to TEX. REV. CIV. STAT. ANN. art. 5190.6).

(development corporation may finance projects costs), (5) (development corporation may issue bonds for project costs). Given the express authorization of section 4A that is not included in section 4B, we cannot infer that what may be a permissible expenditure under section 4A is also permissible under section 4B.

Second, in light of the 1997 amendments to section 4A, there is some question whether *Gaut* remains authoritative with respect to the use of section 4A tax proceeds. In 1997, the legislature enacted two bills, House Bill Nos. 92 and 1525, that substantially expanded the authority of a section 4A development corporation.[8] Section 4A(s) of the Act now authorizes a city with a section 4A development corporation to hold an election to authorize that development corporation to use the sales and use tax "for a specific project or for a specific category of projects, including a sports venue and related infrastructure, that does not qualify under this section but qualifies under Section 4B of this Act." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(s)(1) (Vernon Supp. 1999). An analysis of House Bill 1525 notes that many communities adopted section 4A sales taxes before section 4B was available to them: "Because *spending restrictions under Section 4A are more restrictive than under 4B*, many of these communities feel they are at a competitive disadvantage with 4B cities." HOUSE COMM. ON ECONOMIC DEV., BILL ANALYSIS, Tex. H.B. 1525, 75th Leg. R.S. (1997) (emphasis added). The bill analysis continues: "The House Economic Development Committee studied the issue during the Seventy-fourth legislative interim and recommended that legislation be passed that would [allow] section 4A cities to undertake projects currently exclusive to 4B cities, if [the] voters approved the project. The committee felt that because voters approved the sales tax for *limited spending purposes* under [the] 4A provision, that the voters must approve spending for new purposes." *Id.* (emphasis added).

If *Gaut* is correct that a section 4A development corporation is not limited to funding projects, then it is difficult to imagine the purpose of the 1997 legislation expanding the authority of a section 4A development corporation to expend funds on section 4B projects. Applying the maxim that "[t]he legislature is never presumed to do a useless act," *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981), the 1997 amendments shed light on the Act's proper construction. *See Stanford v. Butler*, 181 S.W.2d 269, 274 (Tex. 1944) ("There is a very well-established rule that where a later act implies a particular construction of an existing law, and particularly where the existing law is ambiguous or its meaning uncertain, interpretation of the prior act by the Legislature as contained in the later act is persuasive when a court is called upon to interpret the prior law."); *see also Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex. 1996) ("When the meaning of an existing law is uncertain, the Legislature's later interpretation of it is highly persuasive.") (citing *Stanford*, 181 S.W.2d 274). The amendments thus suggest that *Gaut* is an overbroad and incorrect reading of the authority to expend funds for purposes other than those recognized expressly in the statute.[9]

---

[8] *See* Act of May 22, 1997, 75th Leg., R.S., ch. 551, § 2, 1997 Tex. Gen. Laws 1929, 1951; Act of June 1, 1997, 75th Leg., R.S., ch. 958, § 1, 1997 Tex. Gen. Laws 2995.

[9] The 1999 amendments to the Act expanding the definition of projects to include educational, job creation, retention, and training facilities, targeted infrastructure, and job training program related expenses support the view that

(continued...)

*Gaut*'s reading renders meaningless not only the 1997 amendments to section 4A, but also a substantial portion of the Act. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 2(4), (10), 3(3), 4A(f), (i), (s)(1), 4B(a)(2), (a-1), (a-3), (a-4), 21 (Vernon Supp. 1999). *Gaut* focuses on the general objective of the Act—promotion of economic development—and disregards the expressly authorized method—funding authorized project costs—to attain that purpose, contrary to well-established principles of statutory construction that require a court to look to a statute as a whole and give effect to each part. *See Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978) (court must look to entire act, not just one provision, to determine legislative intent); *Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (Tex. 1957) (court must give effect to each word and phrase in statute).

The Act's stated purpose is to authorize "means and measures . . . especially with respect to financing," that promote economic development. TEX. REV. CIV. STAT. ANN. art. 5190.6, § 3(3) (Vernon Supp. 1999).[10] Thus it authorizes an eligible city to establish development corporations "*to issue bonds on its behalf to finance the cost of projects* . . . to promote and develop new and expanded business enterprises to promote and encourage employment and the public welfare." *Id.* § 21 (emphasis added) (footnote omitted). It then sets out at length and in detail those projects and costs that such development corporations may pay for or finance. *See* §§ 2(4) (definition of "cost") (10) (definition of "projects" applicable to 4A and 4B development corporations), 4A(f), (i), (s)(1) (section 4A projects ), 4B(a)(2), (a-1), (a-3), (a-4) (section 4B projects).

Looking at the Act as a whole and giving effect to all its parts, the above project funding provisions can have no purpose other than to limit a development corporation to that expressly authorized method for promoting economic development. *See Cole v. Texas Army Nat'l Guard*, 909 S.W.2d 535, 539 (Tex. App.–Austin 1995, writ denied) ("'[W]here a [statutory] power is granted, and the method of its exercise prescribed, the prescribed method excludes all others, and must be followed.'"(quoting *Foster v. City of Waco*, 255 S.W. 1104, 1105 (Tex. 1923)). For if the legislature intended that promotion of economic development be the only limitation on a development corporation's spending authority, as *Gaut* essentially concludes, the legislature clearly did not need to provide the elaborate project funding provisions to attain that result. *See Hunter*, 620 S.W.2d at 551 (legislature is never presumed to do useless act).

In sum, section 4B contains a number of express limitations on expenditures not found in section 4A. Section 4B's authorization to use section 4B tax proceeds is limited to enumerated purposes, namely specified project costs: direct project costs or costs relating to bonds or other obligations issued to finance project costs; sports venue projects if approved by the voters; and maintenance and operation costs of publicly owned and operated projects acquired under section 4B. TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-2), (a-3), (g) (Vernon Supp. 1999). Additionally,

---

[9](...continued)
*Gaut* is an incorrect reading of the statute. *See supra* notes 2-4. Again, if a development corporation is not limited to undertaking projects, it is difficult to imagine the purpose of these legislative amendments.

[10]*See also* HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. S.B. 376, 72d Leg., R.S. (1991) ("The intent of the Development Corporation Act of 1979 (V.T.C.S. art. 5190.6) was to *authorize communities to issue industrial revenue bonds for the purpose of economic development*.") (Emphasis added) (Background).

unlike section 4A, the public accountability provisions in section 4B (public notice, election in certain circumstances, and a public hearing before funds are expended for any project costs) tie collection and use of the tax proceeds to payment of project costs. *Id.* § 4B(a-1), (a-2), (n). Section 4B(h) limits the aggregate expenditures of the sales and use taxes for project costs to $135 million, which limitation would be meaningless if tax proceeds could be spent for other than project costs. Most significantly, section 4B(i) prohibits the collection of the sales and use taxes once all obligations incurred for project costs have been paid or arrangements have been made to fully pay them. Thus section 4B contemplates that section 4B tax proceeds will be used only to pay project costs. Accordingly, we conclude that section 4B tax proceeds may not be used for "promotional" costs that are not project costs.

Although unrelated to projects, your request suggests that providing section 4B tax proceeds to the local chamber of commerce to "maintain a properly-staffed business service office," "organize a Christmas parade that features the City's business district," and operate a "Texan visitor's bureau," may, nonetheless, be characterized as maintenance and operation costs of a public facility and, thus, authorized project costs. We disagree.

Project costs for which tax proceeds may be used do include maintenance and operation costs of certain projects. Specifically, subsection (a-2) of section 4B provides as follows:

> The costs of a *publicly owned and operated project that is purchased or constructed under this section* include the maintenance and operating costs of a project . . . .

*Id.* § 4(B)(a-2) (emphasis added). By its terms, subsection (a-2) authorizes use of section 4B tax proceeds only for maintenance and operation costs of projects purchased or constructed under section 4B. Section 4B(a-3)(2) provides similarly with respect to maintenance and operation costs for publicly owned and operated sports venue projects. *Id.* § 4B(a-3)(2). The expenditures in question, even if they could be characterized as maintenance and operation costs, do not relate to a publicly owned and operated *project* purchased or constructed under section 4B. If there is no publicly owned and operated project, clearly there is no statutory basis to use section 4B tax proceeds for maintenance and operation costs.

Lastly, you ask whether the "grants of sales tax revenues to private organizations [for promotional purposes] constitute prohibited 'gifts' pursuant to article III, § 52 of the Texas Constitution." Given our conclusion that section 4B tax proceeds may not be used for purposes other than project costs, we do not address this question in great depth. We do note, however, that your request states that the development corporation in question "grants" section 4B tax proceeds to private community organizations without any contractual restrictions as to the purposes for which the funds may be expended. This is unauthorized. First, in accordance with our conclusion above, section 4B tax proceeds may be expended only for project costs. Second, neither section 4B nor any other provision of the Act authorizes a development corporation to make a gift or donation of section 4B tax proceeds. *See* Tex. Att'y Gen. LO-97-061, at 4-5 (Act does not permit section 4A development corporation to make gifts of public funds); LO-94-037, at 3 (Act does not authorize

section 4A development corporations to make gifts). Expenditures for even project costs must be pursuant to a contractual or other arrangement sufficient to ensure that the funds are used for the purposes authorized. *See* Tex. Att'y Gen. LO-94-037, at 3 (no provision in section 4A or the Act specifically authorizes development corporation to make grants; "the act requires that any 'grant' by [the section 4A development corporation] . . . be made under contractual or other arrangement sufficient to ensure that the funds granted are actually used in furtherance of the purposes of the act."). Even *Gaut* does not provide otherwise. *Gaut* involved a contract by which the development corporation received a valuable consideration in return for the payments made under the contract. Tex. Att'y Gen. LO-97-061, at 4. Presumably, the contract included terms to ensure that the development corporation received the bargained-for-quid pro quo, jet service. *Id.* Accordingly, any expenditure of section 4B tax proceeds must be made pursuant to a contractual or other arrangement that ensures that the funds will be used for the purposes authorized.

In 1979, this office opined that the Act did not implicate article III, section 52(a) constraints because no public moneys were involved in the expenditures authorized under the Act at that time. *See* Tex. Att'y Gen. Op. No. MW-85 (1979) at 3 (no "public money" involved in issuance of revenue bonds and Act provides that development corporation is not a political subdivision or political corporation; therefore, "there could be no 'grant' or 'donation' of 'public money" in any economic or constitutional sense"). As discussed earlier, the Act changed, however, by the addition of sections 4A and 4B authorizing the collection and expenditure of the sales and use tax. TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 4A(a), (b), (d), 4B(a), (d), (g) (Vernon Supp. 1999). Expenditure of sales and use tax proceeds is unquestionably the expenditure of public moneys within the meaning of article III, section 52(a). The constitutional requirement that any expenditure be made pursuant to a contractual or similar arrangement is not nullified by section 22 of the Act providing that a development corporation "is not intended to be and shall not be a political subdivision or a political corporation within the meaning of the constitution and the laws of the state, including without limitation Article III, Section 52 . . . ." (Vernon 1987). While the legislature may exempt a development corporation from the application of other legislative enactments, it has no authority to exempt a development corporation from the application of a constitutional provision. Accordingly, although a section 4B development corporation is not generally a political subdivision for the purposes of the statutes and regulations governing "political subdivisions," *see* Tex. Att'y Gen. Op. No. JC-109 (1999), section 22 cannot exempt the corporation from the article III, section 52 constraints on expenditure of public moneys.

## S U M M A R Y

Sales and use taxes levied under section 4B of the Development Corporation Act of 1979, TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 1999), may only be used for project costs; they may not be used for "promotional" costs unrelated to projects.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee