JAMES V. ALLRED, ATTORNEY GENERAL, ET AL. V.
J. C. ENGELMAN, INCORPORATED.

No. 6404. Decided June 7, 1933.
Motion for rehearing overruled April 18, 1934.
(61 S. W., 2d Series, 75.)

*James V. Allred,* Attorney General, *T. S. Christopher,* Assistant Attorney General, *J. W. Wheeler,* of Austin, *Bryce Ferguson,* County Attorney of Hidalgo County, and *D. C. Hogan,* both of Edinburg, for plaintiffs in error.

*Kennedy Smith,* of Edinburg, *Ingrum, Smith & Morris,* of San Antonio, for defendants in error.

MR. JUDGE SHORT, of the Commission of Appeals, delivered the opinion for the court.

This suit was filed in the District Court of Hidalgo County by defendant in error, J. C. Engelman, Inc., seeking to restrain James V. Allred, Attorney General of Texas, L. G. Phares, Chief of the State Highway Patrol, and Bryce Ferguson, County Attorney of Hidalgo County, from interfering with or molesting the defendant in error in the use of certain trucks, or arresting the drivers thereof, because said trucks had not been registered or the license fees paid. It was alleged in the petition that J. C. Engelman, Inc., was the owner of a fleet of water-trucks, being used solely and exclusively for the purpose of furnishing water for irrigation to a certain tract of land in Hidalgo County, of which land the corporation owned a part; that the corporation was also the owner of a number of trucks used as gasoline carriers, the sole use of which was the carrying of gasoline and oil from the garages of the corporation to its tractors which were being used in the various orchards and fields in said tract of land. It was further alleged that the above mentioned "water-trucks" and "gasoline-carriers" were implements of husbandry operated or moved temporarily upon the highways and as such were exempted from registration and payment of license fees under the terms of Art. 6675, Revised Statutes of 1925, as amended by Acts of the 41st Legislature, Fifth Called Session, p. 151, ch. 23, sec. 2.

The State of Texas intervened in the trial court, alleging that the plaintiff in that court was attempting to enjoin the collection of license fees required to be paid under the laws of Texas for the operation of certain trucks on the highways of

the State; that said trucks were not exempt from the payment of license and registration fees; and praying for judgment against said plaintiff for the sum of Three Thousand Five Hundred Seventy-two and 24/100 Dollars, the amount of license fees alleged by the intervener to be due.

The trial court granted defendant in error a temporary restraining order and a temporary injunction as prayed for, and upon final hearing on an agreed statement of facts, made the restraining order and injunction permanent, and denied to the State of Texas any relief on its plea of intervention. In its judgment the trial court recited that "all the vehicles in said pleading mentioned are implements of husbandry, operated or moved temporarily upon the highways, and that as such, said vehicles are exempt from the payment of registration fees and licenses under the registration laws of the State of Texas." The Court of Civil Appeals concurred in this holding and affirmed the judgment of the District Court. 54 S. W. (2d) 352.

The agreed statement of facts, insofar as material to the discussion of the questions here, reads as follows:

"It is agreed by the parties hereto, and their attorneys, that this cause shall be submitted upon the following agreed statement of facts: * * *

"2. There is attached hereto, and marked Exhibit 'B' a map of Engelman Gardens, it being agreed that all roads and avenues shown on said map have been duly dedicated to the public, and in connection therewith it is agreed that where specific ownership of land is not shown, portions of the same belong to J. C. Engelman, Jr., and portions to J. C. Engelman, Inc., the plaintiff herein. It is further agreed that a great portion of said entire tract is already set to citrus fruit trees of various varieties, including the lands owned by the plaintiff, and by J. C. Engelman, Jr., and that the plaintiff is the owner of all of the trees on the lands where no specific ownership is shown. It is further agreed that, where third parties own land as shown on said map, the plaintiff is caring for the trees thereon under a contract, sample copy of whch is hereto attached and marked Exhibit 'C.'

"Plaintiff owns and operates a number of trucks, more definitely described by engine number etc., in a list hereto attached, and hereinafter referred to, it being further agreed that none of said vehicles have been or are operated by or under the direction of anyone other than the agents and employees of the plaintiff, said trucks consisting chiefly of truck chassis with galvanized iron or steel tanks permanently mounted there-

on, as shown by picture number 1a, and of old touring chassis, as shown by picture number 2a; it is agreed, as to the use to which said vehicles are put, as follows:

"a.  Said water trucks (picture 1a) are used exclusively for the purpose of furnishing water for irrigation to the trees located on said Engelman Gardens, and for carrying water from various pumping plants, located on canals within said tract of land, to certain other tracts within said Engelman Gardens for said purpose of irrigating said trees.  It is also agreed that said trucks frequently cross over and along all roads and highways shown on said map, and that the following illustration is typical of the manner of such crossing and use; Suppose, for example, that it is desired to water or irrigate by tanks or trucks, the trees located upon the South Half of Lot No. 8, in Block No. 88, as shown on said map.  One of the water trucks is sent from their garage (located at Club House, and where said trucks are kept at night) down to pumping station No. 3, where it is filled with water for irrigation.  Thence it is driven up said paved highway a distance of a quarter of a mile, and from there over to said Lot No. 8, where the water it carries is used to irrigate the trees growing on said lot.  The frequency with which these trucks are used varies with the time of the year, and with the climatic conditions.  In long periods of dry weather, said trucks are, of course, used more frequently than in periods of moderately wet weather, and said trucks are used to water the lands not yet served by concrete canals.  The vehicles such as that shown in picture 2a, are used exclusively for the purpose of carrying gasoline and oil, from the garage at the Club House to the tractors in the fields and orchards in said tract, and for no other purpose.  It is further agreed that all of the vehicles shown in the pictures hereto attached are used in one of the two manners shown herein, and for no other purpose."

The contract referred to as Exhibit "C" in the agreed statement of facts is an agreement entered into by and between J. C. Engelman, Inc., therein called first party, and an owner of land in Engelman Gardens, therein called second party.  First party agrees to cultivate, water or irrigate, prune, bank and wrap (when in the opinion of the first party it is necessary to so bank or wrap) the citrus trees on the land mentioned in the agreement, in a good, workmanlike manner, at the proper time, and in return second party agrees to pay first party for such services the sum of One and 25/100 Dollars per tree each year during the life of the agreement.  It is recited in this agreement that it is of material interest to the first party that all citrus

fruit grown on said entire trace (Engelman Gardens) be uniform in the growth and care and attention thereto.

On a. former appeal in this case (40 S. W. (2d) 945) which was from an interlocutory order granting a temporary injunction and in which the allegations in the petition indicated that J. C. Engelman, Inc., was the owner of all the land and trees being served by the trucks, the Court of Civil Appeals held the vehicles here in dispute to be implements of husbandry. operated or moved temporarily upon the highways, and the Supreme Court refused a writ of error. (121 Texas, 628.) The only material difference between that record and this is that on the present appeal it appears that a part of the land and trees being served by the trucks was owned by other parties who had contracted with J. C. Engelman, Inc., for the irrigation of their orchards and fields. Under the circumstances of this case, we are of the opinion that this difference is not such as to require a different holding.

Acts of 41st Legislature, Fifth Called Session, p. 151, Chapter 23, Section 2, reads as follows:

"Every owner of a motor vehicle, trailer or semi-trailer used or to be used upon the public highways of this state, and each chauffeur, shall apply each year to the State Highway Department through the County Tax Collector of the County in which he resides for the registration of each such vehicle owned or controlled by him, or for a chauffeur's license, for the ensuing or current calendar year or unexpired portion thereof; provided, however, that owners of farm tractors, farm trailers, farm semi-tailers, and implements of husbandry, operated or moved temporarily upon the highways shall not be required to register such farm tractors, farm-trailers, farm-semi-trailers, or implements of husbandy; * * * and providing, further that the exemptions in this section shall not apply to any farm-trailer or farm-semi-trailer when the same is used for hire. * * *

"Nothing in this act shall authorize any person to be subject to penalty of this law on account of his place of residence in this State, nor the occupation pursued."

Section No. 1 of the same Act contains the following definitions which are pertinent to the inquiry here:

" 'Motor Vehicle' means every vehicle, as herein defined, that is self-propelled.

" 'Farm-tractor' means every motor vehicle designed and used primarily as a farm implement for drawing other implements of husbandry.

" 'Tailer' means every vehicle designed or used to carry its load wholly on its own structure.

" 'Semi-trailer means vehicles of the trailer type so designed or used in conjunction with a motor vehicle that some part of its own weight and that of its load rests upon or is carried by another vehicle.

"Farm-trailers" and "farm-semi-trailers" are defined as trailers or semi-trailers designed and used primarily as farm vehicles.

"By 'operated or moved temporarily upon the highways' is meant the operation or conveying between different farms, and the operation or conveyance from the owner's farm to the place where his farm produce is prepared for market or where same is actually marketed and return."

■ Since by the terms of this Act only "motor vehicles, trailers and semi-trailers" are subject to its provisions, and farm-tractors, farm-trailers, and farm-semi-trailers, operated or moved temporarily upon the highways, are expressly excepted from the section requiring registration, the further exception of "implements of husbandry, operated or moved temporarily upon the highways" must clearly exempt from the requirement of registration of other motor vehicles than those expressly exempted which are designed and used primarily as farm vehicles, and which might be operated or moved temporarily upon the highways.

As to the design and use of the vehicles under consideration, the agreed statement of facts reads as follows:

"Plaintiff owns and operates a number of trucks * * *, said trucks consisting chiefly of truck chassis with galvanized iron or steel tanks permanently mounted thereon, as shown by picture number 1a, and of old touring chassis, as shown by picture number 2a; it is agreed, as to the use to which said vehicles are put, as follows: Said water trucks are used exclusively for the purpose of furnishing water for irrigation to the trees located on said Engelman Gardens, and for carrying water from various pumping plants, located on canals within said tract of land, to certain other tracks within said Engelman Gardens for said purpose of irrigating said trees. * * * The vehicles such as that shown in picture 2a, are used exclusively for the purpose of carrying gasoline and oil, from the garage at the Club House to the tractors in the fields and orchards in said tract, and for no other purpose."

The Legislature evidently had in mind that it was impossible to anticipate and expressly describe every motor vehicle whose particular design and use would make of it an implement of husbandry. It did name the ones that readily come to mind as

implements of husbandry, and it was evidently intended by the Legislature that what other vehicles that might be implements of husbandry could be well left to the facts of any particular case, and it was obviously for this reason that the general term "implements of husbandry" was added. It is clear that the purpose of the legislation was to exempt from registration all motor vehicles primarily designed and used for agricultural purposes, temporarily using the highways.

From the agreed statement as to the design of these trucks and the pictures submitted therewith it is seen that they are not ordinary commercial trucks nor are they adapted to use as such. The water-trucks are designed for the sole purpose of carrying water for irrigation purposes, and because of their design could hardly be used for any other purpose. It is shown by the record that the tract in question was in that section of the State which required irrigation in order to make the land productive. It is also shown that no irrigation ditch was available to provide water to this particular tract. Obviously, with these facts in mind, the defendant in error has obtained these trucks and designed them for the purpose of carrying the water which is necessary to make the land productive. It is hard to conceive of any motor vehicle which could more nearly be designed primarily for agricultural purposes. In like manner the gasoline-carriers have been designed by their owner for the particular use to which they are being put, and without which the tractors in the orchards and fields would be rendered useless. While they might conceivably be put to other uses, they were designed primarily and used exclusively for agricultural purposes.

From the agreed statement of facts there is no question but that all the vehicles mentioned in the pleadings are being used exclusively for the purpose of making the particular tract of land more productive of the particular crops to which it is adapted. We are satisfied that the vehicles here in question were both primarily designed and used as implements of agriculture.

■ The further contention is made that these vehicles were not *temporarily* moved or operated upon the highways, but that they were *permanently* operated upon the highways, and being so used they were not subject to the exemption from registration. The highways were used by these vehicles, according to the statement of facts, only in passing from orchard to orchard, or from the source of supply of the water to the particular orchard where the water was discharged for irrigating pur-

poses. Such use of the highways was inevitable because of the manner in which the tract as a whole is cut up and criss-crossed by the roads. Because it so happens, under the facts in this case, that there was laid out across a portion of this tract of land, one or more highways, which necessarily interfered with the operation of these trucks by the owner thereof, in carrying out his agricultural enterprises upon the land, and compelled him temporarily to operate his trucks upon these highways, would not have the effect to subject the vehicles to registration when the same vehicles, if used wholly on one tract of land and never touching the highways, would not be subject to registration. The Legislature has defined temporary use of the highways as "the operation or conveying between different farms." The facts of this case seem clearly within that defini-tion.

As further bearing upon the question of temporary use it is seen from the orchard service agreement set out in the statement of facts that the use being made of the water-trucks was to be abandoned when a certain water improvement district should have its irrigation system ready to serve the particular land and trees. From the definition given by the Legislature in the very Act in question, and from the nature of the use as agreed to by the parties, this Court is of the opinion that these vehicles were operated or moved temporarily upon the highways, and being implements of husbandry as above demonstrated, were exempted from the necessity of registration under the terms of Section 2 of the Act.

■ The Attorney General makes the further contention that since these vehicles were being used for hire, under the orchard service agreements, the exemption from registration did not apply to them. Section 2 of the Act provides that "the exemptions in this section shall not apply to any farm-trailer or farm-semi-trailer when the same is used for hire." Nothing is excepted from the exemption but "farm-trailers" and "farm-semi-trailers," and the express statement that the exemption shall not apply to these when used for hire is an implied expression of intention on the part of the Legislature that the exemption shall apply to all other exempted vehicles, whether used for hire or not.

The conclusions reached by this Court necessarily result in an affirmance of the judgment of the Court of Civil Appeals, and it is so ordered.

The foregoing opinion is adopted as the opinion of the Supreme Court and judgment will be entered in accordance therewith. C. M. Cureton, Chief Justice.