

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00063-CV

_____

DELTA COUNTY APPRAISAL DISTRICT, Appellant

V.

PPF GIN & WAREHOUSE, LLC, Appellee

On Appeal from the 62nd District Court
Delta County, Texas
Trial Court No. 11193

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

O P I N I O N

This case arises out of an ad valorem property-tax dispute regarding seven cotton module trucks owned by PPF Gin & Warehouse, LLC (PPF Gin). In two points of error, Delta County Appraisal District (DCAD) contends that the trial court erred (1) when it granted PPF Gin's motion for summary judgment and denied DCAD's motion for summary judgment[1] and (2) when it granted PPF Gin's motion for summary judgment despite the existence of an issue of material fact.[2] For the reasons below, we affirm the trial court's judgment.

## I. Background

During a cotton harvest, cotton farmers use harvesting machines to remove cotton bolls from cotton plants. Specially equipped machinery gathers the raw cotton bolls into large "modules." In their harvested state, the modules contain both cotton fiber and other debris that must be "ginned" out of the cotton so it can be used by the textile industry. The modules are left in the field to be picked up by cotton module trucks and transported to the gin. At the gin, the modules are placed on a conveyor where the harvested cotton is unwrapped and taken through a filtering process, removing any debris from the cotton fiber. The "ginned" cotton is then sold.

PPF Gin was founded in 2014 and is a Texas limited liability company located in Delta County. PPF Gin grows and harvests its own cotton. In 2018 and 2019, PPF Gin owned seven

---

[1]In its brief, DCAD argues, in its first point of error, that the trial court erred when it granted PPF Gin's motion for summary judgment and, in its second point of error, that the trial court erred when it denied DCAD's motion for summary judgment. Yet, the two points of error address the same issue, and DCAD briefed those points collectively. Consequently, the Court will address DCAD's first two points of error as a single point of error and will refer to it as DCAD's first point of error.

[2]DCAD entitles its third argument, that the trial court erred when it granted PPF Gin's motion for summary judgment despite the existence of an issue of material fact, as an "alternative argument." We will address that argument as DCAD's second point of error.

cotton module trucks that were registered with the State of Texas as cotton vehicles. The module trucks are designed to load the cotton modules in the field and transport them to the gin for processing, and PPF Gin uses them in that manner. When it is not cotton harvesting season, the module trucks are parked and not used.

On May 15, 2018, PPF Gin received a notice from DCAD containing the appraised value of its personal property for the 2018 tax year. The seven cotton module trucks were appraised at $1,096,640.00. PPF Gin subsequently filed a protest with the Delta County Appraisal Review Board (the Board) on the grounds that the market value was incorrect and unequal and that the module trucks were exempt from ad valorem taxation under the Texas Tax Code. Following a hearing before the Board, PPF Gin received a written order on July 6, 2018, denying PPF Gin's protest. On August 28, 2018, PPF Gin filed an original petition against DCAD, asking the district court to review the Board's order denying PPF Gin's claims (1) that the 2018 appraisal of its cotton module trucks was excessive under Section 42.25 of the Texas Tax Code[3] and (2) unequal under Section 42.26 of the Texas Tax Code[4] and (3) that the cotton module trucks were exempt from ad valorem taxation.

---

[3]Section 42.25 of the Texas Tax Code states, "If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court."

[4]Section 42.26 states, in part,

      (a)     The district court shall grant relief on the ground that a property is appraised unequally if:

            (1)     the appraised ratio of the property exceeds by at least 10 percent the median level of appraisal of a reasonable and representative sample of other properties in the appraisal district;

            (2)     the appraisal ration of the property exceeds by at least 10 percent the median level of appraisal of a sample of properties in the appraisal district consisting of a reasonable number of other properties similarly situated to, or of the same general kind or character as, the property subject to the appeal; or

On May 10, 2019, PPF Gin received a 2019 tax appraisal notice appraising the same seven cotton module trucks at $1,008,920.00. PPF Gin filed another protest with the Board on the grounds that its 2019 tax value was excessive and unequal and that the tax exemption had again been denied. On July 2, 2019, the Board issued a written order denying PPF Gin's protest regarding the 2019 tax appraisal. On August 29, 2019, PPF Gin filed an amended petition against DCAD, adding a complaint regarding the Board's 2019 tax appraisal of the cotton module trucks and alleging the same bases as those contained in its original petition. On February 13, 2020, PPF Gin filed a motion for summary judgment, asking the trial court to find, as a matter of law, that its seven cotton module trucks were exempt from ad valorem taxation as implements of husbandry for tax years 2018 and 2019.

On May 28, 2020, DCAD filed a response to PPF Gin's motion and its own motion for summary judgment, arguing that, because PPF Gin's cotton module trucks were not implements of husbandry, they were not exempt from ad valorem taxation. On July 7, 2020, the trial court entered an order finding that PPF Gin's seven cotton module trucks were exempt, granting PPF Gin's summary judgment motion, and denying DCAD's motion. It further ordered "that [DCAD] correct its appraisal roll for tax years 2018 and 2019 and exempt from property taxation the [seven cotton module trucks] as constituting implements of husbandry." Finally, the trial court ordered DCAD "to inform the appropriate taxing unit of this correction as required by the Texas Tax Code." This appeal followed.

---

(3)     the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.

TEX. TAX CODE ANN. § 42.26(a)(1)–(3). The statute goes on to set out how the court should calculate any relief awarded to the property owner. TEX. TAX CODE ANN. § 42.26(b).

## II.  Standard of Review

"A trial court's ruling on a motion for summary judgment is reviewed de novo." *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (2004)).  "To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law."  TEX. R. CIV. P. 166a(c).  "The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence."  *Lam v. Phuong Nguyen*, 335 S.W.3d 786, 789 (Tex. App.—Dallas 2011, pet. denied) (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam)).  We consider the evidence "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion."  *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).  As in this case, when the trial court's order granting a party's summary judgment does not specify the grounds relied upon, an appellate court must affirm if any of the summary judgment grounds are meritorious.  *Cunningham v. Tarski*, 365 S.W.3d 179, 186 (Tex. App.—Dallas 2012, pet. denied).

## III.  The Trial Court Did Not Err When it Granted PPF Gin's Motion for Summary Judgment and Denied DCAD's Motion for Summary Judgment.

### A.  Introduction

The summary judgment evidence in this case establishes that the module trucks in question are equipped with cotton module retriever beds, which are designed to load and haul harvested cotton modules to the gin, where they will be unloaded and filtered.  The trucks are

5

equipped with bed chains and tracks to guide the modules when they are being loaded. The beds have sidewalls, bows, and a tarp to enclose the cotton modules during transportation. The truck manufacturer, Stover Equipment Company, Inc. (Stover), markets, sells, repairs, and services the trucks in all cotton-producing states around the United States to cotton gins, independent cotton producers, and custom cotton haulers. Customers select the type of chassis they want, and then Stover will add or mount the module bed. Notably, to add the cotton module bed to the chassis, alterations are made to the plumbing, shafts, and cylinders, and oil tanks can be added. These additions or alterations make PPF Gin's cotton module trucks specific to the cotton-farming industry. When the trucks are not being used during the harvesting season, they are "parked" and not used for any other reason.

The trial court ruled that the module trucks were exempt from ad valorem taxation under Section 11.161 of the Tax Code, which states: "Machinery and equipment items that are used in the production of farm or ranch products or of timber, regardless of their primary design, are considered implements of husbandry and are exempt from ad valorem taxation." TEX. TAX CODE ANN. § 11.161. Resolution of this case turns on the correct interpretation of Section 11.161.

## B. Rules of Statutory Construction

Statutory construction is a question of law that we review de novo. *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010). Our primary goal in construing a statute is to ascertain and give effect to the Legislature's intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999); *Pilgram's Pride Corp. v. Cernat*, 205 S.W.3d 110, 117

(Tex. App.—Texarkana 2006, pet denied). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen.")); *see also Alex Sheshunoff Mgmt. Servs., LP v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). This is because "the Legislature expresses its intent by the words it enacts and declares to be law." *Bosque Disposal Sys., LLC v. Parker City Appraisal Dist.*, 555 S.W.3d 92, 94 (Tex. 2018) (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011)).

We begin with the "plain and common meaning of the statute's words." *Fitzgerald*, 996 S.W.2d at 865 (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors*, 966 S.W.2d 482, 484 (Tex. 1998)). We construe the statute according to its plain language if the language is unambiguous. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *Fitzgerald*, 996 S.W.2d at 865–66. "This general rule applies unless enforcing the plain language of the statute as written would produce absurd results." *Summers*, 282 S.W.3d at 437 (citing *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999)).

Further, in determining legislative intent, we look at the statute as a whole and not isolated portions. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008). "We also presume that the Legislature included each word in the statute for a purpose, *see Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (1957), and that words not included were purposefully omitted." *Id.* (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). When a statutory term is undefined, we will not find "a meaning that is out of harmony or inconsistent with other

7

provisions in the statute." *McIntyre*, 109 S.W.3d at 745 (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)).

Similarly stated, we look to the meaning of the words used, or of a particular clause, within the context of the statute, which "requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014) (citing *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013); *Fitzgerald*, 996 S.W.2d at 866). Generally, "the words [the Legislature] chooses should be the surest guide to legislative intent." *Summers*, 282 S.W.3d at 437 (quoting *Fitzgerald*, 996 S.W.2d at 866). "Only when those words are ambiguous will we 'resort to rules of construction or extrinsic aids.'" *Id.* (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)). Nevertheless, "[i]n construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the: (1) object sought to be obtained; (2) circumstances under which the statute was enacted; [and] (3) legislative history. . . ." TEX. GOV'T CODE ANN. § 311.023.

As DCAD points out, "Exemptions from taxation are not favored by the law and will be strictly construed." *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 269 (Tex. 1979). Statutory tax exemptions are strictly construed because they result in placing a greater burden on some taxpayers, rather than all of them. *Baptist Mem'l Geriatric Ctr. v. Tom Green Cty. Appraisal Dist.*, 851 S.W.2d 938 (Tex. App.—Austin 1993, pet. denied). However, "the rule of strict construction" does not "require the adoption of the least reasonable of two possible constructions, and particularly if that one be less effective to accomplish the manifest purpose of

8

the exemption." *City of Abilene v. State*, 113 S.W.2d 631, 635 (Tex. App.—Eastland 1937, writ dism'd), *disapproved on other grounds by City of Beaumont v. Fertitta*, 415 S.W.2d 902, 911 (Tex. 1967).

### C. Application

#### 1. Legislative History of Section 11.161

##### a. Constitutional Authority for Section 11.161 and the November 2, 1982, Constitutional Amendment

Pursuant to the power granted in Article VIII, Section 1, of the Texas Constitution, the 67th Texas Legislature adopted Section 11.161 of the Tax Code. Tex. Att'y Gen. Op. No. MW-451 (1982). In its original form, Section 11.161 stated, "**Implements of Farming or Ranching.** An individual is entitled to an exemption from taxation of implements of farming or ranching that he owns and uses in the production of farm or ranch products." Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 13, § 32, 1981 Tex. Gen. Laws 117, 127 (codified as an amendment to TEX. PROP. CODE § 11.161). In 1982, during the second called session of the 67th Legislature, the Texas Legislature adopted a joint resolution proposing to amend Article VIII of the Texas Constitution by adding Section 19a, to state: "Implements of husbandry that are used in the production of farm or ranch products are exempt from ad valorem taxation." Act of May 28, 1982, Tex. S.J. Res. 8, § 1, 67th Leg., 2d C.S., 1982 Tex. Gen. Laws 50, 50 (enacted).

The Texas Legislative Council noted in its analysis of this proposed constitutional amendment,

> The proposed amendment does not define "implements of husbandry," but express language limiting the availability of the exemption to those implements of husbandry used in the production of farm or ranch products implies that the

9

exemption applies only to those implements that are actually used for agricultural purposes such as growing crops or raising livestock. Although "implements of husbandry" traditionally may have referred to agricultural tools or utensils that formed part of, or were attached to, equipment or machinery driven by horsepower, in recent times the term has come to include various self-propelled machinery and equipment items such as tractors, planting machines, and combines. The ballot proposition for the proposed amendment includes clarifying language indicating that "implements of husbandry" includes "agricultural machinery and equipment," demonstrating an intent to adopt the broader, modern meaning of the word.

Texas Legislative Council, Analysis of Proposed Constitutional Amendments Appearing on November 2, 1982, Ballot, Information Report No. 82-3, July 1982, https://lrl.texas.gov/scanned/ Constitutional_Amendments/Amendments67_tlc_1982-11-02.pdf.[5] On November 2, 1982, the citizens of the State of Texas approved the amendment to Article VIII of the Texas Constitution to add Section 19a. *See* TEX. CONST. art. VIII, § 19a.

---

[5]The analysis went on to state the arguments for the amendment:

       1.     The proposed amendment promises partial relief for economically hard-pressed farmers and ranchers without serious adverse effect on local governments' tax bases.

       2.     Taxing agricultural equipment and machinery often is barely cost-effective because of the disproportionately high expense of locating the property and assessing and collecting the tax.

It then listed the arguments against the amendment:

       1.     The voters have amended the constitution twice since 1979 to give tax relief to farmers and ranchers--expanding eligibility for favorable methods of valuing agricultural land and totally exempting from taxation livestock and poultry in the hands of the producer. Additional tax relief for farmers and ranchers is not needed.

       2.     It is trite but true: a tax exemption merely shifts part of the tax burden from the beneficiaries--farmers and ranchers in this case--to all other taxpayers. Owners of homes and businesses, among others, will have to pay for the proposed exemption through higher property taxes.

Texas Legislative Council, Analysis of Proposed Constitutional Amendments Appearing on November 2, 1982, Ballot, Information Report No. 82-3, July 1982, https://lrl.texas.gov/scanned/Constitutional_Amendments/ Amendments67_tlc_1982-11-02.pdf. By approving the amendment, the citizens of the State of Texas rejected the arguments against the amendment and accepted the arguments in favor of the amendment.

### b. Subsequent Legislative Amendments to Section 11.161 After the Adoption of Article VIII, Section 19a, of the Texas Constitution

The Texas Legislature significantly amended Section 11.161 on two occasions after Article VIII, Section 19a, of the Texas Constitution was adopted, each time expanding the exemption in Section 11.161.[6]  It was first amended in 1983 to expand the exemption from property owned and used by the taxpayer to simply property "used in the production of farm . . . products."  "Sec. 11.161.  IMPLEMENTS OF FARMING OR RANCHING.  Implements of husbandry that are used in the production of farm or ranch products are exempt from ad valorem taxation."  Act of May 25, 1983, 68th Leg., R.S., ch. 851, § 7, 1983 Tex. Gen. Laws 4819, 4823 (footnote omitted) (eff. Aug. 29, 1983).   Section 11.161 was also amended in 2005 to read as it presently reads:[7] "Sec. 11.161.  IMPLEMENTS OF HUSBANDRY.  *Machinery and equipment items* that are used in the production of farm or ranch products or of timber, *regardless of their primary design, are considered to be implements of husbandry and* are exempt from ad valorem taxation."  Act of May 27, 2005, 79th Leg., R.S., ch. 412, § 6, 2005 Tex. Gen. Laws 1103, 1105 (eff. Jan. 1, 2006).   Our resolution of this case calls for us to interpret Section 11.161 in light of these constitutional and legislative amendments.

---

[6]Section 11.161 was amended on three other occasions, none of which factor into our opinion. *See* Act of Mar. 25, 1991, 72d Leg., R.S., ch. 16, § 17.01, 1991 Tex. Gen Laws 244, 367; Act of May 22, 1989, 76th Leg., R.S., ch. 631, § 3, 1989 Tex. Gen. Laws 3191, 3191 (eff. Jan. 1, 2020); and Act of May 19, 2019, 86th Leg., R.S., ch. 370, § 1, 2019 Tex. Sess. Law Serv. 672, 672 (eff. Jan. 1, 2000).

[7]The 2019 amendment designated the original language as subsection (a) and added new subsection (b), but it did not alter the language of the statute as it existed after 2005.

**2.** **The Module Trucks Are Used in The Production of Farm Products.**

       **a.** **The Plain Language of Section 11.161 Supports PPF Gin's Argument that the Module Trucks Are Exempt From Ad Valorem Taxation**

We begin by observing that Section 11.161 does not state that "implements of husbandry are exempt from ad valorem taxation"; instead, it states that "machinery and equipment items that are used in the *production of farm . . . products . . .* are exempt from ad valorem taxation." TEX. TAX CODE ANN. § 11.161 (emphasis added). Although Section 11.161 declares that such "machinery and equipment items . . . are considered implements of husbandry," the question before us is not whether the module trucks in this case are "implements of husbandry" but instead whether they are "machinery or equipment items that are used in the production of farm . . . products." *Id.* Accordingly, the first question we must resolve is whether the module trucks in this case are "used in the production of farm . . . products."

The term "production" is not defined by Section 11.161, and there are no cases interpreting that section. In this instance, the Supreme Court has held,

> When a statute uses a word that it does not define, our task is to determine and apply the word's common, ordinary meaning. The fact that the word may sometimes be used to convey a different meaning is the very reason why we look for its common, ordinary meaning. To determine its common, ordinary meaning, we look to a wide variety of sources, including dictionary definitions, treatises or commentaries, our own prior constructions of the word in other contexts, the uses and definitions of the word in other statutes and ordinances, and the uses of the words in our rules of evidence and procedure.

*Jaster v. Comet II Construction, Inc.*, 438 S.W.3d 556, 563 (Tex. 2014).

Webster's Dictionary defines the term "production" as "2 a: the act or process of producing b: the creation of utility, *esp*: the making of goods available for use 3: total output,

12

esp. of a commodity or an industry available for use." *Production*, WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006). Black's Law Dictionary defines the term "production" as "1. The act or process of making or growing things, esp. those to be sold <the production of consumer goods> . . . 3. The creation of economic value; the making available of goods to satisfy human desires <the production and consumption of wealth>." *Production*, BLACK'S LAW DICTIONARY (10th ed. 2014). Therefore, the term production is defined in two ways. According to the first definition, production is synonymous with the mere creation of farm products. Using that definition, the production of cotton would end when the cotton bolls ripen on the plant. According to the second definition, production is the creation of farm products to the extent that they become available for use by others and create economic value. Using that definition, the production of cotton would include every stage of production from the cultivation of the cotton plants to the point that the cotton on those plants become available for sale in a form that is usable by others. As explained below, we find that the second definition is the correct one.

To begin with, Section 11.161 states that the exemption applies to "machinery or equipment items that are used in the production of *farm . . . products*." TEX. TAX CODE ANN. § 11.161 (emphasis added). While Section 11.161 does not define the term "farm products," Section 11.16 does. TEX. TAX CODE ANN. § 11.16(a), (b) (Supp.). Section 11.16 provides "an exemption from taxation of the farm products that [a producer] produces and owns" as well as those "in the hands of the producer." TEX. TAX CODE ANN. § 11.16(b). Section 11.16 goes on to state that "'[f]arm products' include livestock, poultry, and timber," TEX. TAX CODE ANN. § 11.16(c)(1), and that "[a] nursery product, as defined by Section 71.041, Agriculture Code, is a

13

farm product for purposes of this section if it is in a growing state," TEX. TAX CODE ANN. § 11.16(a). Section 71.041(3) of the Agriculture Code defines "nursery product" as "a tree, shrub, vine, cutting, graft, scion, grass, bulb, or bud that is grown for, kept for, or is capable of, propagation and distribution for sale or lease." TEX. AGRIC. CODE ANN. § 71.041(3).

Thus, under a plain reading of Section 11.16 of the Tax Code and Section 71.041(3) of the Agriculture Code, farm products "include livestock, poultry, and timber," as well as any "tree, shrub, vine, cutting, graft, scion, grass, bulb, or bud that is grown for, kept for, or is capable of, propagation and distribution for sale or lease." *Id.* This definition of "farm products" includes every stage from the creation of the product to the point that it is available for sale in a form that is usable by others. Therefore, when Section 11.161's language "used in the production of farm . . . products" is read in light of the definition of "farm products" in Section 11.16, then Section 11.161's exemption for "machinery or equipment items that are used in the production of farm . . . products" would include all "machinery or equipment items" used by the producer[8] from the creation of the crop to the point that the product is available for sale in a form that is usable by others.

---

[8]As noted, under the facts of this case, PPF Gin is the producer of the cotton that the module trucks picked up and delivered to the gin. Accordingly, we need not examine the effect of the 1983 amendment changing the exemption from "implements of farming or ranching" that an individual "*owns and uses* in the production of farm or ranch products" to "machinery or equipment items *used* in the production of farm or ranch products." Rather, our interpretation of Section 11.161 in this case is limited to "machinery or equipment items used in the production of farm . . . products" *by the producer*. We express no opinion regarding the applicability of Section 11.161 to any such "machinery or equipment items" used by someone other than the producer.

14

### b. Exemption of the Module Trucks Is Consistent With the Property Tax Scheme in Chapter 11 of the Tax Code

Second, this conclusion is consistent with the statutory scheme in Chapter 11. Section 11.01(c) creates broad authority for taxing tangible personal property. TEX. TAX CODE ANN. § 11.01(c) ("This state has jurisdiction to tax tangible personal property if the property is (1) located in this state for longer than a temporary period."). Section 11.14(a) creates a broad exemption from taxation for "all tangible personal property . . . that [a] person owns and that is not held or used for the production of income." TEX. TAX CODE ANN. § 11.14(a).[9] Consequently, when Sections 11.01(c) and 11.14(a) are read together, the State[10] only has the authority to tax tangible personal property that is "held or used for the production of income."

Clearly, the machinery and equipment items of a commercial farmer "used in the production of farm . . . products" are "used to produce income"; therefore, the tangible personal property of a commercial farmer would ordinarily be subject to taxation under Section 11.01(c) because it is not exempt from taxation under Section 11.14. However, Section 11.161 exempts "machinery or equipment items used in the production of farm . . . products." TEX. TAX CODE ANN. § 11.161. Yet, because Section 11.14 exempts from taxation all tangible personal property (including machinery and equipment items) that are not income producing, then any non-income-producing "machinery or equipment items used in the production of farm . . . products"

---

[9]Section 311.005(2) of the Government Code states, "'Person' includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX. GOV'T CODE ANN. § 311.005(2). And the exemption in Section 11.14(a) automatically applies without any action by the owner. *See* TEX. TAX CODE ANN. § 11.43(a).

[10]Article VIII, Section 1-e, of the Texas Constitution states, "No ad valorem taxes shall be levied upon any property within this State." TEX. CONST. art. VIII, § 1-e. Nevertheless, local governmental agencies still retain the power to levy ad valorem taxes. *W. Orange-Cove Consol. Indep. Sch. Dist. v. Alanis*, 78 S.W.3d 529, 534 (Tex. App.—Austin 2002), *rev'd on other grounds*, 107 S.W.3d 558 (Tex. 2003).

would already be exempt from ad valorem taxation. Thus, the exemption in Section 11.161 must be directed towards machinery or equipment items that are income producing; otherwise, there would be no need for the exemption under Section 11.161. Merely growing a crop is not income producing; therefore, the exemption in Section 11.161 must extend to all uses of "machinery and equipment items . . . in the production of farm . . . products" that are necessary to develop the crop to the point that it is available for sale in a manner that is useable by others.

Moreover, the second interpretation is consistent with the language of Section 11.14. Section 11.14 exempts "tangible personal property . . . that is not *held* or *used* for production of income." TEX. TAX CODE ANN. § 11.14(a). Section 11.16 exempts specific income producing tangible personal property that is "*held*" by the owner. TEX. TAX CODE ANN. § 11.16(a), (b) ("farm products that [a producer] produces and owns" and "farm products in the hands of the producer"). Section 11.161 exempts other specific income-producing tangible personal property that is "*used*" by the owner.[11] TEX. TAX CODE ANN. § 11.161 ("machinery or equipment items that are *used* in the production of farm . . . products"). Consequently, we find that Section 11.161 uses the term "production" in the second sense—i.e., that production includes every stage of production by the producer from the mere creation of farm products to the point that they are available for sale in a form that is usable by others—and therefore, Section 11.161's exemption for "machinery or equipment items that are used in the production of farm . . . products" would include all "machinery or equipment items" owned and used by the producer from the creation of the crop to the point that the product is available for sale in a form that is usable by others.

---

[11]*See supra* note 11.

### c. Exemption of the Module Trucks Is Consistent with the Constitutional and Legislative History of Section 11.161

Finally, as noted previously, Article VIII, Section 19(a), was intended to "adopt the broader, modern meaning of the term" "implements of husbandry." Texas Legislative Council, Analysis of Proposed Constitutional Amendments Appearing on November 2, 1982, Ballot, Information Report No. 82-3, July 1982, https://lrl.texas.gov/scanned/Constitutional_ Amendments/Amendments67_tlc_1982-11-02.pdf. And, the Legislature has twice amended Section 11.161 after the adoption of Section 19(a) to expand the scope of that exemption. Thus, both Section 19(a) and the Legislative history behind Section 11.161 indicate an intent by both the citizens of the State of Texas and the Texas Legislature to apply the exemption in Section 11.161 broadly. Consequently, the second definition of "production" is more consistent with the constitutional and legislative history of Section 11.161 than the first definition. When we apply the second definition to the module trucks in question, it is clear that they are exempt from ad valorem taxation under Section 11.161.

Logically, a crop must be harvested to be available for sale in a form that is usable by others. Therefore, a combine would be exempt from ad valorem taxes as an "implement of husbandry" under Section 11.161 because it is "used in the production of farm . . . products." TEX. TAX CODE ANN. § 11.161. And the Legislative Council's analysis of Article VIII, Section 19(a), states that, "in recent times, the term [implements of husbandry] has come to include . . . equipment items such as tractors, planting machines, *and combines*." *Id.* (emphasis added). Yet, a combine merely removes the cotton bolls from the plant and compresses them into a module in the field. At that point, the crop is literally still in the field "[un]available for use." Production,

17

WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006). To be fully available for sale in a form that is usable by others, then, the modules must be removed from the field. Accordingly, removal of the modules from the field is related to "the production of farm . . . products." TEX. TAX CODE ANN. § 11.161. Because one of the module truck's functions is to remove the cotton modules from the field, and in light of the intent to "adopt the broader, modern meaning of the term" "implements of husbandry," the module trucks constitute "machinery . . . used in the production of farm . . . products"[12] and are, therefore, exempt from ad valorem taxes under Section 11.161.[13]

### 2. Use of The Module Trucks to Transport the Modules to the Gin Does Not Defeat the Exemption Under Section 11.161

Of course, as noted previously, the module trucks in this case not only remove the cotton modules from the field, they also transport them to the gin. DCAD argues that there is a distinction for purposes of Section 11.161(a) between *production of farm products* and *transportation for processing* and that, because PPF Gin's cotton module trucks are transportation vehicles, they are not implements of husbandry. DCAD contends that the trucks

---

[12]*See* Texas Legislative Council Analysis, *supra* p. 17.

[13] We note that the Texas Legislative Council's Analysis states that although
> the proposed amendment does not define 'implements of husbandry,' . . . the express language limiting the availability of the exemption to those implements of husbandry used in the production of farm or ranch products implies that the exemption applies only to those implements that are actually used for agricultural purposes *such as growing crops or raising livestock*.

*See* Texas Legislative Council Analysis, *supra* p. 10 (emphasis added). If read in isolation, it could be argued that the highlighted language suggests that the exemption does not apply to any machinery or equipment items used after the fruit ripens on the plant. Nevertheless, the analysis goes on to say that "combines"—which are clearly not used in "growing crops"—are included within "the broader, modern meaning of the word [machinery or equipment items]." *Id*. Therefore, our interpretation and Section 11.161 does not conflict with the Legislative Council's Analysis of Art. VIII, Section 19a, of the Texas Constitution.

18

"are not designed for or used in the process of growing or harvesting cotton. They are specifically designed for and marketed to cotton processors as haulers, and used in the process of hauling and processing harvested cotton into cotton fiber." Consequently, DCAD maintains, they are not "implements of husbandry" and are, therefore, not tax exempt pursuant to Section 11.161.

DCAD did not attach summary judgment evidence to its motion or to its response to PPF Gin's motion. Instead, it relied entirely on PPF's summary judgment evidence. It directs us to a 1982 attorney general's opinion, one civil and one criminal case, and two sections of the Texas Transportation Code purporting to define implements of husbandry in the context of vehicle licensing tax exemptions. Those authorities are clearly distinguishable from the present case.

To begin with, Attorney General Opinion number MW-451, cited by DCAD, was issued prior to the adoption of Article VIII, Section 19(a). Given the significant amendments to Section 11.161 since then, the attorney general opinion is no longer persuasive. In addition, the opinion relied on cases interpreting the statute declaring certain property to be exempt from execution by creditors, which includes implements of husbandry. The Office of the Attorney General (OAG) opined that implements of husbandry are "those items of equipment or machinery whose primary design and primary use or purpose is that of an implement used by a farmer or rancher in conducting his farming or ranching operations." Tex. Att'y Gen. Op. No. MW-451 (1982) (citing former TEX. REV. CIV. STAT. ANN. art. 3832(4), now codified at TEX. PROP. CODE ANN § 42.002(a)(4)). Nevertheless, in 2006—subsequent to the OAG's opinion—the Texas Legislature amended Section 11.161 by adding the language stating that the exemption applies to

"machinery or equipment items that are used in the production of farm . . . products . . . , *regardless of their primary design*." TEX. TAX CODE ANN. § 11.161 (emphasis added). Thus, the OAG's opinion now contradicts the express language of Section 11.161. Although an attorney general's opinion may be persuasive, it is not binding on this Court. *See City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010) (citing *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996)). While we agree with the OAG opinion that the determination of whether property is exempt from ad valorem taxation is made on a case-by-case basis, we reject the OAG's interpretation of the scope of Section 11.161's exemption.[14]

DCAD also directs us to *Allred v. J.C. Engelman, Inc.* (*Allred I*), 40 S.W.2d 945, 946 (Tex. App.—San Antonio 1931, writ ref'd). There are actually two court of appeals opinions and one Supreme Court opinion in *Allred*, all of which considered the applicability of a statutory exemption to a vehicle license fee for "implements of husbandry." *Id.*; *Allred v. J.C. Engleman, Inc.* (*Allred II*), 54 S.W.2d 352 (Tex. App.—San Antonio 1932), *affirmed, Allred v. J.C. Engelman, Inc.* (*Allred III*), 61 S.W.2d 75, 78 (Tex. 1933). In *Allred I*, the court of appeals reviewed the trial court's order granting a temporary injunction. *Allred III*, 61 S.W.2d at 78. In *Allred II*, the court of appeals reviewed the trial court's judgment making the preliminary injunction permanent. *Allred II*, 54 S.W.2d at 352. In both cases, the court of appeals determined that trucks used to carry water to irrigate citrus trees and a gasoline truck designed and used for the sole purpose of providing gasoline to tractors in the orchards and fields were exempt from the licensing requirements as implements of husbandry because they were used in

---

[14]We express no opinion regarding the OAG's opinions distinguishing between stationary structures versus moveable machinery and equipment items.

20

growing crops rather than in a commercial nature. *Id.* Pursuant to *Allred I*, DCAD contends that the cotton module trucks are commercial in nature but that they were not used to grow crops.

*Allred I*, *II*, and *III* examined the motor vehicle license exemption for vehicles traveling public roads contained in Articles 6675a-1(q) and 6675a-2 of the Texas Civil Statutes. *Allred II*, 54 S.W.2d at 352 (citing TEX. REV. CIV. STAT. ANN., now codified at TEX. TRANS. CODE ANN. §§ 502.001(20), 502.040(Supp.)). At the time of *Allred I*, *II*, and *III*, the motor vehicle registration statutes provided that "owners of . . . implements of husbandry, operated or moved temporarily upon the highways shall not be required to register such . . . implements of husbandry." *Allred III*, 61 S.W.2d at 77. In ruling that Allred's equipment was exempt from vehicle registration as implements of husbandry, the Supreme Court held, "It is clear that the purpose of the legislation was to exempt from registration all motor vehicles primarily designed and used for agricultural purposes, temporarily using the highways." *Id.*[15]

As with the OAG opinion, the Supreme Court relied on the primary design or purpose of the equipment in question to determine that they were exempt from the registration requirements as implements of husbandry, whereas Section 11.161 now exempts "machinery or equipment

---

[15]The Supreme Court concluded,

> The water trucks are designed for the sole purpose of carrying water for irrigation purposes, and because of their design could hardly be used for any other purpose. It is shown by the record that the tract in question was in that section of the state which requires irrigation in order to make the land productive. It is also shown that no irrigation ditch was available to provide water to this particular tract. Obviously, with these facts in mind, the defendant in error has obtained these trucks and designed them for the purpose of carrying the water which is necessary to make the land productive. It is hard to conceive of any motor vehicle which could more nearly be designed primarily for agricultural purposes. In like manner, the gasoline carriers have been designed by their owner for the particular use to which they are being put, and with out [sic] which the tractors in the orchards and fields would be rendered useless. While they might conceivably be put to other uses, they were designed primarily and used exclusively for agricultural purposes.

*Allred III*, 61 S.W.2d at 78.

21

items used in the production of farm . . . products . . . , *regardless of their primary design*." TEX. TAX CODE ANN. § 11.161 (emphasis added). Also, the registration statute in question contained a temporary use element that is not present in Section 11.161. *Allred III*, 61 S.W.2d at 77 ("owners of . . . implements of husbandry, *operated or moved temporarily upon the highways* shall not be required to register such . . . implements of husbandry") (emphasis added). And, once again, Section 11.161 does not exempt implements of husbandry per se, it exempts "machinery or equipment items used in the production of farm . . . products." TEX. TAX CODE ANN. § 11.161. Accordingly, we find that the *Allred* opinions are distinguishable from the present case.

DCAD also cites to *Reaves v. State*, 50 S.W.2d 286 (Tex. Crim. App. 1931). *Reaves* was a criminal case interpreting an exception to a penal statute that made it illegal for a person to "oper[ate] upon a public highway a motor vehicle of forbidden length." *Id.* at 286. The defendant did not dispute that he had operated a vehicle in a manner that violated the statute, yet he argued that his conduct fell within an exception for "implements of husbandry . . . temporarily propelled or moved upon the public highways." *Id.* The Court of Criminal Appeals held that, "without discussing or deciding" whether a vehicle more than forty-five feet in length could practically be used on a farm, it admitted that, "if a farmer should desire to transport such vehicle along the highways from place of purchase to place of intended use, or from one place of use to another, this would be the 'temporary propelling or moving' contemplated by [the exception] . . . and hence would be permissible." *Id.* at 287. Thus, the court in *Reaves* assumed, without deciding, that the defendant's equipment constituted an "implement of husbandry," but

22

concluded that the exception did not apply based on the defendant's primary use of that equipment to transport a load across the highways. *Id.* As noted above, Section 11.161 does not exempt implements of husbandry per se, it has no element for the duration of use on the public roads, and it applies "regardless of [the machinery or equipment items'] primary design." TEX. TAX CODE ANN. § 11.161. Thus, *Reaves* is not applicable to this case.

DCAD also refers to Section 541.201(6) of the Texas Transportation Code, which defines "implement of husbandry" as

> (A)     a vehicle, other than a passenger car or truck, that is designed and adapted for use as a farm implement, machinery, or tool for tilling the soil;
> (B)     a towed vehicle that transports to the field and spreads fertilizer or agricultural chemicals; or
> (C)     a motor vehicle designed and adopted to deliver feed to livestock.

TEX. TRANSP. CODE ANN. § 541.201(6) (Supp.). Once again, Section 11.161 does not exempt "implements of husbandry" per se, it exempts "machinery or equipment items used in the production of farm . . . products," and it does so "regardless of their primary design." TEX. TAX CODE ANN. § 11.161. The constitutional and legislative history behind Section 11.161 reflects a unique concern regarding ad valorem taxation of agricultural equipment as opposed to licensure. Because Section 541.201(6) is a licensing statute rather than an ad valorem taxation statute, it is inapposite to this case.

Finally, DCAD directs us to Section 502.146 of the Texas Transportation Code, which states, in part, as follows:

> (a)     The department shall issue distinguishing license plates to a vehicle described by Subsection (b) or (c). The fee for the license plates is $5 and shall be deposited to the credit of the Texas Department of Motor Vehicle fund.

23

(b)    An owner is not required to register a vehicle that is used only temporarily on the highways if the vehicle is:

    (1)    a farm trailer or farm semitrailer with a gross weight of more than 4,000 pounds but not more than 34,000 pounds that is used exclusively:

        (A)    to transport seasonally harvested agricultural products or livestock from the place of production to the place of processing, market, or storage.

. . . .

(c)    An owner is not required to register a vehicle that is:

    (1)    a farm trailer or farm semitrailer owned by a cotton gin and used exclusively to transport agricultural products without charge from the place of production to the place of processing, market, or storage . . . .

TEX. TRANSP. CODE ANN. § 502.146 (Supp.).

Without offering any legal authority in support of its position, DCAD asserts that Section 502.146, subsections (b) and (c), "acknowledge the difference between vehicles used as implements of husbandry and vehicles used for transportation of harvested farm products, as well as distinguish[] the place of production from the place of processing." Yet, even if we assume without deciding that DCAD's interpretation of Section 502.146 is correct, that statute contains a temporary-use element that is not present in Section 11.161, and its definition of the term "implements of husbandry" for purposes of that code's licensing and registration requirements does not reflect the constitutional and legislative history behind Section 11.161's exemption for "machinery or equipment items used in the production of farm . . . products . . . , regardless of their primary design." TEX. TAX CODE ANN. § 11.161. Accordingly, we find nothing in Section 502.146(c)(1) that changes our analysis.

24

### 3. Summary

In summary, DCAD's proposed interpretation of Section 11.161 would restrict application of the exemption to non-transportation uses. It would effectively disregard the constitutional and legislative amendments since 1982 and return the scope of Section 11.161's exemption to its pre-1982 status. Nothing in the statute suggests such a distinction, and, in fact, the constitutional and legislative history behind Section 11.161 indicates an opposite intent to expand the exemption to apply to modern agricultural machinery that perform income-producing functions. Because exemption of the module trucks in this case is consistent with the plain language of Section 11.161, the taxation scheme in Chapter 11 of the Tax Code, as well as the constitutional and legislative history behind Section 11.161, we find that the module trucks in this case are exempt from ad valorem taxation. Therefore, the trial court did not err in granting PPF Gin's motion for summary judgment.

### IV. DCAD Failed to Properly Brief Its Second Point of Error

In its second point of error, DCAD contends that the trial court erred in granting PPF Gin's motion for summary judgment despite the existence of a disputed issue of material fact as to whether PPF Gin's vehicles were used during the production of farm products. In response, PPF Gin maintains that DCAD waived its point of error because it did not make a clear and concise argument or cite to the record in support of its position. We agree.

"The Texas Rules of Appellate Procedure control the required contents and organization for an appellant's brief." *Valadez v. Avita*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (citing TEX. R. APP. P. 38.1). In order to avoid forfeiting a legal argument for inadequate

briefing, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and the record." TEX. R. APP. P. 38.1(i). "Failure to cite legal authority or provide substantive analysis of the legal issues presented results in waiver of the complaint." *Id.* (citing *Martinez v. El Paso Cty.*, 218 S.W.3d 841, 844 (Tex. App.—El Paso 2007, pet. struck).

Here, DCAD's second point of error is presented as follows:

> Based on the relevant [summary judgment] authorities indicating that the use of a vehicle for production of farm products is not the same as its use for transportation or processing of harvested farm products, the summary judgment evidence does not show there is no dispute as to the fact that PPF's vehicles were used "in the production" of farm products.

As such, DCAD did not provide us with a clear and concise argument and did not direct us to the necessary and appropriate authorities and record citations. Accordingly, DCAD has failed to properly raise the issue for our review. DCAD's second point of error is, therefore, overruled.

## V.   Conclusion

We affirm the judgment of the trial court.


                                        Ralph K. Burgess
                                        Justice


Date Submitted:      March 24, 2021
Date Decided:        July 29, 2021


26